LONE STAR GREYHOUND PARK, INC. and Galveston Bay Greyhound Racing Association, Ltd., Appellants,

v.

TEXAS RACING COMMISSION and Gulf Greyhound Partners, Ltd., Appellees.

No. 3–92–586–CV.

Court of Appeals of Texas, Austin.

Aug. 25, 1993.

Rehearing Overruled Oct. 20, 1993.

---

Timothy J. Herman, Brown McCarroll & Oaks Hartline, Austin, for Lone Star Greyhound Park, Inc.

Joe K. Longley, Longley & Maxwell, L.L.P., Austin, for Galveston Bay Greyhound Racing Ass'n, Ltd.

Dan Morales, Atty. Gen., George Warner, Asst. Atty. Gen., Austin, for Texas Racing Com'n.

David C. Duggins, Clark, Thomas, Winters & Newton, Austin, for Gulf Greyhound Partners, Ltd.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

Lone Star Greyhound Park, Inc., and Galveston Bay Greyhound Racing Association, Ltd., sued for judicial review of a final order issued by the Texas Racing Commission. Gulf Greyhound Partners, Ltd., intervened. The trial court affirmed the agency order. We will affirm the trial-court judgment.

## THE CONTROVERSY

The Commission licenses the operation of greyhound races, and attendant pari-mutuel betting, under the terms of the Texas Racing Act, Tex.Rev.Civ.Stat.Ann. art. 179e, § 6 (West Supp.1993) (the "Act"). *See* Act, § 6. The present controversy arose when five competing applicants requested the single license authorized for Galveston County.[1]

*The First Agency Decision.* After an evidentiary hearing, the Commissioners voted on July 14, 1989, to grant Lone Star's application, subject to certain conditions, and to reject the other applications. The vote was never effectuated by a written order. The Commission extended the time for issuing a final order and shortly afterwards granted a motion by the agency staff that the evidence be re-opened. The Commission heard additional evidence and, on November 7, 1989, issued a written order purporting to award the license to Lone Star subject to specified conditions.

After their motions for rehearing were overruled by operation of law, the unsuccessful applicants sued in separate suits for judicial review of the Commission's order of November 7, 1989. *See* Act, § 5.02; Adminis-

---

1. The five applicants were Lone Star Greyhound Park, Inc. (Lone Star); Galveston Bay Greyhound Racing Association, Ltd. (Galveston Bay); Gulf Greyhound Partners, Ltd. (Gulf Greyhound); Galveston Greyhound Racing Association; and Bay Greyhound Racing Associated Limited Partnership.

trative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (West Supp.1993) (APTRA). The trial court consolidated the various actions and Lone Star intervened, aligned with the Commission as defendant. On April 9, 1990, the trial court dismissed the consolidated actions, for want of jurisdiction, on the court's determination that the Commission's order of November 7, 1989, was not a final order within the court's power of review. *See* APTRA § 19(a). Lone Star failed to perfect its appeal from the trial-court judgment. *See Lone Star Greyhound Park, Inc. v. Bay Greyhound Racing Assoc. Ltd. Partnership,* No. 3–90–125–CV (Tex.App.—Austin June 30, 1990, writ denied) (not designated for publication). Thus the trial-court judgment of April 9, 1990, remains a valid and subsisting judgment.

*The Second Agency Decision.* On May 16, 1990, the Commission convened and reopened the evidence in the contested case. After hearing further evidence, the Commission, in a written order dated January 29, 1991, awarded the license to Gulf Greyhound and rejected the competing applications. Lone Star and Galveston Bay sued for judicial review of the order, which the trial court affirmed. This appeal ensued.

Lone Star urges six points of error. One point contends the Commission was without jurisdiction to reopen the agency proceedings on May 16, 1990, rendering void the Commission's second decision and order. Another point asserts the Commission erred in reopening the proceedings on that day. These two points of error are determinable from the agency record under APTRA § 19(e)(1)–(4). In its four remaining points of error, Lone Star complains of "procedural irregularities alleged to have occurred before the agency but which are not reflected in the record." APTRA § 19(d)(3). These points of error are determinable from evidence received in the trial court, upon which the court made findings of fact and conclusions of law.

Galveston Bay brings twenty-three points of error contending the Commission's order should be reversed based on the same and similar procedural errors not reflected in the agency record. The Commission brings one cross-point of error contending the trial court erred in allowing Lone Star to assert violations of the Open Meetings Act because Lone Star lacked standing to make the claims. Gulf Greyhound urges seven cross-points attacking the trial court's refusal to exclude testimony during judicial review of the 1991 order.

## THE COMMISSION'S JURISDICTION

Lone Star contends in its first point of error that the Commission lacked jurisdiction to issue its order of January 29, 1991, awarding the license to Gulf Greyhound, because the agency's preceding order of November 7, 1989, issuing the license to Lone Star, was a final order not subject to reconsideration by the agency. Lone Star argues, as it must, that we are free to disregard the trial-court judgment of April 9, 1990, holding that the Commission's previous order was *not* final.

The trial-court judgment of April 9, 1990, *explicitly* determined that the Commission's order of November 7, 1989, was *not* a final order. No appeal was perfected from that judgment. "Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992); *see also Whilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982). Whether rightly or wrongly, it was finally determined that the order of November 7, 1989, was not a final agency order, and the parties in this litigation are bound thereby. We overrule Lone Star's first point of error.

## NO "CHANGED CIRCUMSTANCES"

Lone Star contends in its fourth point of error that if the Commission had the power to reopen the proceedings, after the trial-court decision of November 7, 1989, the agency erred in doing so because there was no evidence of "changed circumstances" adduced before the Commission. *See South Tex. Indus. Servs., Inc. v. Texas Dep't of Water Resources,* 573 S.W.2d 302, 304 (Tex. Civ.App.—Austin 1978, writ ref'd n.r.e.) (agency may reopen matter and issue different order on showing of changed circumstances); *cf. Sexton v. Mount Olivet Ceme-*

*tery Ass'n,* 720 S.W.2d 129, 138 (Tex.App.— Austin 1986, writ ref'd n.r.e.) (agency's *power* to reopen proceeding depends upon express or implied statutory grant of the power to do so).

■ Until an agency issues an order that is final and effective, the agency retains jurisdiction of the contested-case controversy and need *not* show changed circumstances to withdraw its order and issue a new one. *See South Taylor County Indep. Sch. Dist. v. Winters Indep. Sch. Dist.,* 151 Tex. 330, 249 S.W.2d 1010, 1012 (1952). Lone Star reasons from a premise that the Commission's order of November 7, 1989, by which Lone Star purportedly acquired a license, was a final and effective order. That is incorrect. As discussed above, the order of that date was *not* a final and effective agency order.

Lone Star's argument does not really address the pertinent issue. The issue pertains actually to the Commission's exercise of its statutory power, in a larger sense, after the reviewing court decided the agency's initial decision was not a final and effective one. When the trial court so decided, the Commission was again charged with the statutory duty of judging the competing applications in light of what the Act and the agency rules required in order to effectuate the statutory objectives. This included a duty to decide such particulars as whether to reopen the evidence. The fact that the Commission's initial decision was held non-final did not create rights of priority in Lone Star as against the statutory objectives themselves.

> It is a guiding principle of administrative law ... that "an administrative determination in which is embedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge."

*Prairie Constr. Co. v. Operating Eng'rs,* 425 U.S. 800, 806, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976) (citation omitted).

We overrule Lone Star's fourth point of error and turn now to its several contentions, and those of Galveston Bay, concerning the "procedural irregularities alleged to have occurred before the agency but which are not reflected in the [agency] record." APTRA § 19(d)(3).

## TEXAS OPEN MEETINGS ACT VIOLATIONS

■ Lone Star contends we should hold void the Commission's final order because it issued from Commission meetings held in violation of the "Open Meetings Act," Tex. Rev.Civ.Stat.Ann. art. 6252–17 (West Supp. 1993) ("TOMA").[2]

*Written Notice.* Section 3A(a) of TOMA requires that "[w]ritten notice of the date, hour, place and subject of each meeting ... shall be given before a meeting." Lone Star contends the notices furnished by the Commission, in advance of its meetings on May 16, 1990, and June 1, 1990, did not state with sufficient specificity the "subject" of the meeting.

The notice preceding the meeting of May 16, 1990, declared as follows:

> The Texas Racing Commission's Greyhound Racing Section will meet to consider and vote on matters relating to the Greyhound Racetrack License for Galveston County. The Greyhound Racing Section will meet in Executive Session to receive information from and ask questions of General Counsel on Procedural Matters relating to the Greyhound Racetrack License for Galveston County.

The notice preceding the meeting of June 1, 1990, lists several subjects, including "Consideration of and Votes on matters relating to the Greyhound Racetrack Licnese [sic] for Galveston County." We note that the Act authorizes only three greyhound racetracks for the State, and these must be located in counties that border the Gulf of Mexico. Act, § 6.04(c).

In *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 764–66 (Tex.1991),

---

2. Because we hold as we do below, we need not address the Commission's cross-point of error in which the agency contends Lone Star lacked the

"standing" necessary to complain of a TOMA violation.

the supreme court reviewed its decisions concerning the sufficiency of subject descriptions given in notices required by TOMA. We believe both of the Commission's advance notices meet the degree of specificity demanded by TOMA as construed in *City of San Antonio* and the decisions cited therein. We refer particularly to the notice in *Texas Turnpike Authority v. City of Fort Worth,* 554 S.W.2d 675, 676 (Tex.1977), which declared that the government body would "[c]onsider request ... to determine feasibility of a bond issue to expand and enlarge the Dallas–Fort Worth Turnpike." We hold the two written notices in the present cause sufficient.

*Executive–Session Notice and Announcement.* As indicated above, the Commission's advance notice of the meeting held on May 16, 1990, recited that the Commission would "meet in Executive Session to receive information from and ask questions of General Counsel on Procedural Matters relating to the Greyhound Racetrack License for Galveston County." Lone Star contends the subject description was insufficient because the breadth implicit in the word "matters" logically includes every imaginable sub-topic and excludes none. We believe the subject description sufficiently specific. It identifies the particular purpose of the executive session—consultation with the general counsel; and the notice identifies which of the three possible greyhound racetrack licenses would be discussed—the license for Galveston County, which was in litigation at the time. *See Cox Enters., Inc. v. Board of Trustees,* 706 S.W.2d 956, 959 (Tex.1986) (school board not expected to disclose its litigation discussions in written notice but cannot totally conceal fact that pending lawsuit will be discussed). Listing the particulars of litigation discussions would defeat the very purpose embodied in TOMA section 2(e), which permits private consultations between the government body and its attorney "with respect to pending or contemplated litigation, settlement offers, and matters where the duty of a public body's counsel to his client ... clearly conflicts with this Act."

■ Lone Star also complains that the executive-session segment, in the meeting of May 16, 1990, was not preceded by a proper public announcement as TOMA section 2(a) requires. That statute forbids an executive session except when a quorum of the governmental body has first convened in open meeting, for which notice has been given, and the presiding officer "has publicly announced that a closed or executive meeting or session will be held and *identified the section* or sections under this Act authorizing the holding of such closed or executive session." TOMA § 2(a) (emphasis added).

In the meeting of May 16, 1990, the Commission convened in open session and the presiding officer announced publicly as follows:

> For the record, the purpose of the executive session is so that our legal staff can brief us in regards to the agenda today and I'm sure all of you know what the agenda is today in regards to the Lone Star matter that's been passed down from the Court for us to review.

It is plain that the presiding officer did not identify, by section *number,* the provision of TOMA section 2(e) that authorizes private consultations between a government body and its lawyers relative to pending litigation. The issue reduces then to whether it is sufficient to refer only to the *content* of the TOMA section relied upon to justify the private consultations. This should be judged in reference to the purposes underlying the statutory requirement imposed in TOMA section 2(a).

We believe the purposes underlying the requirement of a public announcement, identifying the section relied upon by the government body, are several: to cause the governmental body actually to assess the applicability of the exceptions listed in section 2 of TOMA before deciding to close the meeting; to fix the government body's legal position as relying upon the exception specified; to inform those present at the meeting of that exception and thus the justification invoked by the government body; and by doing so, to give those present an opportunity to object intelligently. *See Bowen v. Calallen Indep. Sch. Dist.,* 603 S.W.2d 229, 236 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). We should therefore judge the sufficiency of

any particular public announcement in light of whether it effectuates or hinders these purposes.

We hold that the presiding officer's public announcement was sufficient. The district court had returned the litigation to the Commission for reconsideration, and the private discussion with "legal staff" had the stated purpose of permitting the staff to "brief" the Commission members on "matters" that were pertinent. It seems to us that this was a sufficient identification of TOMA section 2(e) for the purposes indicated.

■ Lone Star also contends the exception was improperly invoked because there was no pending or contemplated litigation at the time of the executive session. Section 2(e) extends the private-consultation exception to "pending or contemplated litigation" and "matters where the duty of the public body's counsel to his client, pursuant to the Code of Professional Responsibility of the State Bar of Texas, clearly conflicts with the Act."

The record reflects that all the unsuccessful applicants had filed suit against the Commission based on the November 1989 order. The trial court signed on April 9, 1990, a judgment in the consolidated actions. The presiding officer made his announcement on May 16, 1990. This Court did not adjudge until June 3, 1990, that Lone Star had failed to perfect its appeal. The controversy was thus in actual litigation at the time the presiding officer made the announcement on May 16, 1990. We hold section 2(e) was therefore applicable to the Commission's closed executive session.[3]

■ *Certified Agenda or Tape Recording.* Lone Star complains the Commission failed to maintain and preserve a certified agenda or audio tape recording of the executive session held May 16, 1990. Section 2A(a) of TOMA requires a certified agenda with the formalities set out in subsections 2A(b) and (c); subsection 2A(d) provides that a tape recording may serve in lieu of a certified agenda.

Section 2A(a) expressly states, however, that "consultations in accordance with" TOMA section (2)(e) are an exception to the general requirement of a certified agenda. We hold, therefore, that the Commission was not obliged to keep either a certified agenda or tape recording of the executive session held on May 16, 1990.[4]

For the reasons given, we overrule Lone Star's second point of error.[5]

**FAILURE TO READ AGENCY RECORD**

■ In its fifth point of error, Lone Star contends the Commission's final order of January 29, 1991, should be reversed because a majority of the commissioners who voted to issue the license did not read the agency

---

3. Lone Star cites *Phelps Dodge Refining Corp. v. Marsh*, 733 S.W.2d 359 (Tex.App.—El Paso 1987, no writ), to support its argument. *Phelps* interpreted the Texas Rule of Civil Procedure Rule 166b(3)(d) discovery exception, which applies when a party has "good cause" to believe a suit will be filed. The *Phelps* court held that the exception only applied if there was some "outward manifestations of future litigation," not just "a good faith belief" suit would be filed. *Id.* at 361. Here, however, actual litigation was pending.

4. The record reflects that the Commission's general counsel did tape the executive session. The trial court, upon learning of the tape's existence, ordered its production. The tape, however, was missing from the Commission's files and was never produced.

The Commission's general counsel, before the trial court's order of production but after Lone Star's motion for production had been filed, tes-

tified by affidavit that she searched for the tape. During the search, she discovered two tapes labelled May 16th. One contained the general meeting proceedings; the other was blank. She discarded the blank tape "to avoid confusion." Lone Star, in arguing the Commission violated TOMA, imputes corrupt motives to the actions of the Commission's general counsel. Her actions are not relevant under the point of error before us, however, because TOMA did not require a tape under the circumstances.

5. Lone Star, in an outline of its argument under this point of error, contends the executive session violated, in addition to the sections discussed above, TOMA § 2(r). Section 2(r), however, applies to communications between employees of the governmental body during *open* meetings. Further, Lone Star did not brief this aspect of its argument, and the trial court made findings of fact that the "whispered conversations" Lone Star complained of to the trial court did not violate § 2(r). The finding is not challenged.

record as required by APTRA section 15.[6] Galveston Bay makes a similar attack in its point of error one and assails, in points of error two through five, specific trial-court findings of fact and conclusions of law related to this issue. Section 15 of APTRA provides as follows:

> If in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, may not be made until a proposal for decision is served on the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs to the officials who are to render the decision.

Being evidently doubtful about the validity of the proposal for decision served on the parties, the Commissioners elected to read the record.[7] Lone Star argues the Commissioners did not actually comply with APTRA section 15 in the sense of reading the entire record as opposed to selected parts. The trial court found that two of the three Commissioners had read the entire record although they "skimmed" unidentified parts of it. This finding was inferred from evidence received in the trial court.

Section 15 of APTRA is derived from section 11 of the Model State Administrative Procedure Act (1961) issued by the Commissioners on Uniform State Laws. *See* Model State Administrative Procedure Act (1962), 15 U.L.A. § 11 (1990) (Model Act). One of the six major principles of the Model Act was to assure "personal familiarity with the evidence on the part of responsible deciding officers and agency heads in" contested-case adjudications. Model Act, 15 U.L.A. at 141–42 (prefatory note) (Commissioners on Uniform State Laws 1961). The requirement that agency decision makers (1) hear the evidence, (2) read the record, or (3) entertain briefs and oral arguments following a proposal for decision, has a purpose: "It is intended to preclude 'signing on the dotted line.'" *Id.* § 11 (comment). We believe, therefore, that we may impute the same purpose to APTRA section 15 in judging whether the Commissioners complied with its provisions in the present case or whether they abandoned their decision-making obligation and simply signed "on the dotted line."

We must bear in mind that the Commissioners had personally heard the evidence adduced before their earlier vote to issue the license to Lone Star. After return of the controversy from the district court, the hearing examiner received additional evidence, some of which was cumulative of that given earlier. The record furnished to the Commissioners for their reading contained the entire body of evidence received in the contested case.

In the trial court, two of the Commissioners testified they read the transcript of all the hearings, some exhibits, depositions, prefiled testimony, the truncated proposal for decision, and its related exceptions and briefs filed by the parties. The third Commission-

**6.** Lone Star offers no argument on this point of error but incorporates and adopts the arguments offered by Galveston Bay.

**7.** The Commissioners personally heard that part of the evidence adduced before the Commission issued the license to Lone Star by order dated November 7, 1989. After the trial court held that order was not a final order, the court returned the controversy to the Commission. The Commissioners thereupon appointed a hearing examiner to conduct the remainder of the contested case. At the close of the evidence in this part of the case, the examiner purported to issue a "proposal for decision" in the case. *See* APTRA § 15. In that document, however, the examiner expressly declined to recommend that any particular applicant should receive the license, as among the competing applicants. The "proposal for decision" did purport to include

findings of fact and conclusions of law, as required by APTRA § 15. The "findings of fact" consisted of incorporating certain findings recommended by the applicants; the "proposal for decision" denominates these as "illustrative of the type of findings ... necessary to a decision approving one of the applicants." The only conclusions of law reached by the examiner were to the effect that the Commission had jurisdiction over the case and the applicant selected by the Commission would meet the required standards if chosen.

Three of the applicants complained the examiner's report was not a "proposal for decision" within the meaning of APTRA § 15. The Commissioners thereupon elected to read the record as a basis for their decision, as permitted, of course, by APTRA § 15.

er testified she read everything filed in the contested case. Galveston Bay and Lone Star offered contrary evidence in the form of testimony given in court by a speed-reading teacher. He gave his opinion that one could not have read the large amount of material in the amount of time the Commissioners testified they spent on the matter. From the evidence, the trial court declined to find that a majority of the Commissioners had not read the record as required by APTRA section 15.

Lone Star did not, in our view, carry its burden of proof as to the procedural irregularity alleged. The trial court failed to make the findings Lone Star required. There was affirmative evidence showing the Commissioners spent considerable time reviewing the record and no evidence showing that they did not comprehend and rely upon the parts of the record they believed material to a decision. Certainly there was no evidence showing *as a matter of law* that the Commissioners' neglect of the record or want of comprehension as to the material parts amounted to an abandonment of their decision-making responsibilities and their signing a final order without regard to the evidence.

Accordingly, we overrule Lone Star's fifth point of error and Galveston Bay's points of error one through five.

### EX PARTE COMMUNICATIONS

In its sixth point of error, Lone Star contends the trial court should have set aside the Commission's final order of January 29, 1991, because the order was fatally poisoned by ex parte communications prohibited by APTRA section 17.[8] Galveston Bay raises the same argument in its points of error six through twenty-three, assailing on the same ground specific trial-court findings and conclusions of law regarding the subject of ex parte communications. The ex parte communications were as follows.

■ *Commission Members and General Counsel.* The prohibition in APTRA section 17 does not ordinarily apply to contested-case communications between agency decision makers and the agency's general counsel. *See County of Galveston v. Texas Dep't of Health,* 724 S.W.2d 115, 124 (Tex.App.— Austin 1987, writ ref'd n.r.e.). Lone Star and Galveston Bay contend, however, that this exception does not apply in this case because Paula Carter, the Commission's general counsel who communicated with the Commissioners about the contested case, had participated in the proceedings.

■ It is undisputed that Carter engaged in oral and written communications with the Commissioners during the contested case; attended the hearings held in the first phase of the contested case, which did not culminate in a final order; and presided at the meeting in December 1989, when the Commissioners heard oral argument on the unsuccessful applicants' motions for rehearing. From the evidence adduced in the trial court, the court found as follows regarding Carter's communications with the Commissioners: (1) they concerned only procedural or administrative matters and not the merits of the contested case; (2) they were not made as a conduit for bringing before the Commissioners the parties' views regarding the merits of the various applicants; (3) they did not amount to suggestions as to how the Commissioners should vote; (4) they did not pertain to the preparation of findings of fact or conclusions of law; and (5) all parties were aware of the communications and did not object to them before issuance of the final order on January 29, 1991.

The trial court concluded the communications between Carter and the Commissioners did not amount to a violation of APTRA section 17, and in any case such a violation was harmless or had been waived.

Lone Star and Galveston Bay argue against the factual conclusions the trial court drew from the evidence. They argue that Carter conferred with the Commissioners on matters of fact as well as law; that she recommended how the Commissioners should vote and explained pending motions to them; that she reported to a Commissioner regard-

---

8. Lone Star offers no argument on this point but incorporates and adopts the arguments offered by Galveston Bay.

ing one of the conditions imposed on Lone Star in the order of November 7, 1989; and that she served as a "go-between" or conduit between the parties and the Commissioners. The trial court declined to find the facts necessary to support these allegations. Therefore, Lone Star and Galveston Bay are obliged to show that the evidence established as a *matter of law* that the allegations are true. They fail to do so.

Lone Star and Galveston Bay point to a single specific matter discussed by Carter with a commissioner. Ironically, it involves the status of Lone Star's efforts to comply with a condition imposed upon the license issued to Lone Star on the Commission's order that was eventually held not to be a final order. After a meeting with Lone Star's counsel, Carter, and the Commission staff, Carter informed a commissioner of Lone Star's attempts to satisfy the condition—a financial requirement. This conversation occurred, however, after the Commission had overruled the motions for rehearing in the contested case and the trial court had acquired jurisdiction of the matter in suits for judicial review filed by the dissatisfied applicants. *See* APTRA §§ 16(c), 19(b)(3); *South Tex. Indus. Servs.*, 573 S.W.2d at 304.

Galveston Bay's reference to Carter as a "go between" or conduit between the parties and the Commissioners refers, apparently, to discussions she had with the applicants' counsel about scheduling and procedures. There is no indication in the evidence that these discussions involved evidence or the merits of the contested case.[9]

■ *A Commissioner and the Agency Veterinarian.* Lone Star and Galveston Bay complain of a conversation in mid-November 1990, between the Commission's staff veterinarian, Sue Baittie, and Dr. Demarious Frey, a commissioner.[10] Lone Star and Galveston Bay alleged that Frey told Baittie how the commissioners were going to vote and the identity of the particular applicant that would receive the license.

The evidence adduced in the trial court, as to this alleged procedural irregularity, is conflicting. The two participants in the conversation recalled its content quite differently. The trial court declined to find in the conversation a violation of APTRA section 17 and concluded that any such violation was harmless in any event.

The prohibition of APTRA section 17 was designed for a specific purpose—to prevent "litigious facts" coming before agency decision makers outside the evidentiary record in the contested case. *See Galveston County,* 724 S.W.2d at 119–21. Lone Star and Galveston Bay do not contend, however, that the Frey–Baittie conversation had that result, so that the commissioners might have made their respective decisions in the case based on grounds outside the agency record. Instead, Lone Star and Galveston Bay argue simply that they were deprived of an opportunity to cross-examine the three commissioners who had, according to Baittie's testimony in the matter, reached a decision in the case before they read the record. Unless evidence is tested by cross examination, its truthfulness and materiality remain doubtful. That is one important *reason*, among others, why APTRA section 17 prohibits ex parte communications about issues of fact and law. But a violation of the prohibition is not shown unless a party establishes that the *content* of the ex parte conversation came within the prohibition. The trial court declined to make a finding that such was the case. The evidence conflicts on what the content of the conversation was; we therefore cannot say the conversation came within the prohibition as a matter of law. We hold accordingly.

For the reasons given, we overrule Lone Star's sixth point of error and Galveston

---

9. Like the other applicants, both Galveston Bay and Lone Star's counsel contacted Carter during the proceedings regarding procedural and administrative matters. They first complained of her role after the license had been issued to Gulf Greyhound. The trial court concluded that, even if the claim had merit, Lone Star and Galveston Bay had waived it.

10. Although APTRA § 17 allows commission members to communicate ex parte with agency employees if they have not participated in any hearing in the case, Baittie does not fall within this category because of her participation in the selection of the license holder.

Bay's points of error six through twenty-three.

## DENIAL OF DUE PROCESS OF LAW

### 1. Lone Star

In its third point of error, Lone Star contends the manner in which the Commission reopened the contested-case proceeding violated Lone Star's constitutional right to due process of law. The trial court made findings of fact and conclusions of law relative to Lone Star's allegations, based on evidence received in the trial court. Lone Star does not challenge the findings of fact; we will, therefore, treat them as valid and subsisting facts by which to judge the correctness of the trial court's conclusions of law. *See Adams v. American Quarter Horse Ass'n,* 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

*Vested Right.* Lone Star contends the order of November 7, 1989, even if not final for purposes of judicial review, was final in the sense that it "had gone into effect and thereby affected the practical relationship between Lone Star and the Commission." Lone Star argues that it had, therefore, a vested, protected interest in the license that could not be altered except through procedures for revoking or suspending the license and that reopening the evidence was the equivalent of a new proceeding that deprived Lone Star of its constitutional right to due process of law.

■ Lone Star obtained its license under the Act. Section 5.02(a) of the Act provides implicitly for judicial review of the Commission's orders. That is to say, the Commission's order awarding Lone Star the license was subject to judicial review by the very terms of the statutory scheme under which the license was issued. Such review was obtained, and it was decided that the purported final order was not, indeed, a final order. Lone Star could have no vested right by reason of an order not final. *See Houston Indep. Sch. Dist. v. Houston Chronicle,* 798 S.W.2d 580, 589 (Tex.App.—Houston [1st Dist.] 1990, writ denied). "[I]t is not contrary to due process to allow ... administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around." *Withrow v. Larkin,* 421 U.S. 35, 37, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975).

*Impartial Decision Maker.* The Comptroller of Public Accounts is an ex officio member of the Commission by virtue of section 2.02(a) of the Act. Bob Bullock occupied the office of Comptroller and was therefore a commissioner at the time the Commission decided the contested case now before us. He voted to reopen the case after its return from the district court, as ordered by the Commission on May 16, 1990.

Earlier in the contested case, however, Bullock had voluntarily recused himself and his representative because Bullock's brother worked for a firm that had done preliminary architectural work for Galveston Bay. Before the vote to reopen the evidence, Bullock's representative announced that Bullock's brother was no longer actively involved in the architectural firm, the firm's income would not be affected by the Commission's decision, and the representative would cast Bullock's vote in the case. The Commission overruled Lone Star's motion to recuse Bullock. Lone Star asserts it was denied due process of law in consequence.

■ It is presumed Bullock was unbiased, and the burden of establishing a disqualifying interest lay upon Lone Star. *See Schwieker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982). The record shows no disqualification on Bullock's part, nor does it show that any of his actions were less than impartial. *See Withrow,* 421 U.S. at 54–55, 95 S.Ct. at 1468; *Balla v. Texas State Bd. of Medical Examiners,* 693 S.W.2d 715, 717 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Lone Star argues it was denied due process of law because Bullock had not read the record, compiled in the contested case, before he voted to reopen the evidence. Section 15 of APTRA requires, however, that in certain circumstances the record must be read by agency decision makers before they make a *final* decision in the contested case. Such was not the case in the vote on May 16, 1990. Finally, we observe the Commission, without Bullock's participation, *ratified* in its June 1, 1990, meeting the decision taken May

16, 1990, to reopen the evidence. The trial court declined to find that Bullock was biased or disqualified to act on any aspect of the contested case, including the motion to reopen the evidence. We cannot conclude the contrary as a matter of law based on the record before us.

■■■ *Lack of Notice and Hearing.* Lone Star complains it was denied notice and hearing in connection with the Commission's decision, on May 16, 1990, to reopen the evidence. The demands of due process of law do not require a hearing at the initial stage, or at any particular point in the administrative proceeding, so long as a hearing is held before the final order becomes effective. *Opp Cotton Mills v. Administrator,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941); *Adams,* 583 S.W.2d at 835. Lone Star, like all the applicants, had notice of and an opportunity to participate in the subsequent hearings that followed the Commission's decision to reopen the evidence. Lone Star did, of course, participate in the hearings before May 16, 1990.

Finding no deprivation of due process of law, as averred by Lone Star, we overrule its third point of error.

### 2. Galveston Bay

■■■ Galveston Bay, in its points of error twenty through twenty-three, complains it was denied due process of law because of alleged procedural irregularities in the contested case. The trial court declined to find from the evidence the facts necessary to sustain these irregularities. Galveston Bay argues on appeal that it established the requisite facts, as a matter of law apparently, and that they show a deprivation of due process of law that was harmful to Galveston Bay.

The procedural irregularities in question are: (1) the Commissioners' failure to "read the record" as discussed previously; (2) the ex parte communications discussed previously; and (3) a claim that Commissioner Doran and Commissioner Frey were biased decision makers. In connection with the alleged ex parte communications, Galveston Bay points particularly to the fact that it was deprived of the opportunity to cross examine those involved and an opportunity to offer rebuttal evidence to the statements made in such communications.

We have held above that the record does not show as a matter of law that the commissioners failed to read the agency record sufficiently to comply with APTRA section 15 or that the ex parte communications in question were such as to invalidate the agency order because they violated APTRA section 17.

Galveston Bay asks us to conclude that Commissioner Frey was biased as a matter of law because she predicted, in a conversation with the veterinarian, Baittie, how the commissioners would vote and which applicant would receive the license. Galveston Bay asks us to conclude as a matter of law, from a part of the evidence adduced in court, that Commissioner Doran was biased because in December 1990, before issuance of the license to Gulf Greyhound in January, Doran "felt" one or two of the four applicants "should not get the license."

We decline to hold as a matter of law, on such thin evidence, that the two commissioners were biased decision makers and that Galveston Bay was harmed in consequence. We find in the evidence nothing to suggest a specific foundation for the bias attributed to Doran. We have discussed previously the Frey–Baittie conversation. We are asked to conclude (1) that one version of the conversation as opposed to the other was correct; and (2) that Frey's statement, if adopted as correct, amounted to a statement that the commissioners had decided the case in advance on matters outside the law and the evidence. We cannot find as a matter of law, contrary to the trial court's determination, the first element. We cannot find the second element, as a matter of law, because the content of the alleged statement is insufficient in and of itself to impugn the fairness of the commissioners. "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Withrow,* 421 U.S. at 55, 95 S.Ct. at 1468 (quoting *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429

(1941)). The trial judge was in the best position to judge the relevant particulars. The presumption has not been defeated as a matter of law. Accordingly, we overrule Galveston Bay's points of error twenty through twenty-three.

Because of our holdings above, we need not address Gulf Greyhound's cross-points of error. Finding no error as assigned, we affirm the trial-court judgment.