# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00411-CV

**Nathan Wayne Stark, Appellant**

**v.**

**Mike Geeslin, Commissioner of Insurance, and Texas Department
of Insurance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN403869, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Nathan Wayne Stark appeals from the district court judgment affirming the final order of the Commissioner of the Texas Department of Insurance[1] denying Stark's application to acquire Fidelity First Insurance Company of Dallas. In four issues, Stark complains that the Commissioner's order violates due process; exceeds the Commissioner's authority under section 823.157 of the insurance code; lacks evidentiary support; and improperly finds that Stark's application failed to meet the regulatory standards for approval. Finding no due process violation and concluding that the Commissioner acted within his statutory authority and that his decision was supported by substantial evidence, we affirm the judgment of the district court.

---

[1] We substitute Mike Geeslin, successor to Jose Montemayor as Commissioner of the Texas Department of Insurance, as the proper party on appeal. *See* Tex. R. App. P. 7.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2003, Stark submitted a Form A application with the Texas Department of Insurance seeking approval to purchase Fidelity First Insurance Company of Dallas. In the cover letter submitted with his application, Stark acknowledged that his Form A application was incomplete, and he promised to submit additional documentation under separate cover. Stark's cover letter stated:

> We believe this to be a completed Form A except for the most recent audited financial statement for Mr. Stark which will be provided as a supplement under separate cover in approximately one week. In addition, a few of the biographical affidavits and fingerprint cards will also be provided under separate cover within a few days.

When the Department received Stark's application, it was assigned to the Commissioner's staff for review. Staff identified several areas of concern and sent four letters to Stark requesting additional information. These letters were dated July 18, September 18, October 16, and November 25, 2003. Although Stark responded to each of these requests, his responses did not provide full and complete information requested by the Commissioner regarding Stark's Form A application. Stark's application proposed using First Fidelity Risk Managers, Inc., as managing general agent for Fidelity First. But the documentation submitted by Stark revealed that First Fidelity Risk Managers, Inc., was not licensed to do business in Texas, or any other state. Additionally, when the Commissioner requested updated financial information from Stark to determine the source of cash for Stark's purchase of Fidelity First, the answers Stark provided were

2

confusing. First, Stark said that he would fund the purchase out of his personal funds. But later, Stark said that one of his subsidiaries, SkilStaf International, Inc., would provide the purchase money funds to acquire Fidelity First. Based on the financial statements and other information provided by Stark, however, the Commissioner concluded that SkilStaf International, Inc., was financially incapable of providing Stark with a purchase money loan. The Commissioner also inquired about Stark's proposed plan for reinsurance,[2] but Stark failed to provide a commitment letter from a reinsurer.

Even after the Commissioner's four requests for additional information, Stark failed to provide sufficient information to complete his Form A application. As of December 3, 2003, the Commissioner still had not received the proposed policy forms to be used by Fidelity First or the loan agreement from Stark. Accordingly, on December 16, 2003, the Commissioner issued Official Order No. 03-1247 denying Stark's application.

Stark timely requested a hearing on the denial of his application, which the Commissioner referred to the State Office of Administrative Hearings. *See* Tex. Ins. Code Ann. § 823.157 (West Supp. 2005). A hearing was convened before an administrative law judge on May 5, 2004. The ALJ recommended denial of Stark's application on the grounds that Stark had failed to meet the burden of proving, by a preponderance of evidence, that his Form A application should have been approved and that Stark failed to provide all of the information regarding his Form A application as required by the Commissioner's rules. *See* 28 Tex. Admin. Code §§ 7.205, .209

---

[2] Reinsurance is insurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange for a percentage of the original premium. Black's Law Dictionary 1290 (7th ed. 1999).

3

(2006). The Commissioner adopted this recommendation and issued a final order denying Stark's application on November 1, 2004.

Stark filed a motion for rehearing, which was overruled by operation of law. Stark then sought judicial review in district court. The district court granted judgment affirming the Commissioner's order. Stark appeals the district court's judgment.

## DISCUSSION

### *The Controversy*

This appeal concerns the Commissioner's construction of section 823.157 of the Texas Insurance Code regarding the purchase of a domestic insurance company. *See* Tex. Ins. Code Ann. § 823.157. In four issues, Stark complains that the Commissioner's final order (1) violates due process; (2) exceeds the Commissioner's jurisdiction; (3) is not supported by a preponderance of evidence; and (4) that the testimony and record evidence establish that his application met all of the regulatory standards for approval. The Commissioner responds that neither due process nor the plain language of section 823.157 requires the Commissioner to provide notice or a hearing before taking adverse administrative action on Stark's application. The Commissioner further responds that he acted entirely within the scope of his jurisdiction under Chapter 823 of the Texas Insurance Code, and his final order was supported by substantial evidence.

### *Standard of Review*

The Commissioner's action is subject to judicial review under the substantial evidence rule. Tex. Ins. Code Ann. §§ 36.201–.203 (West Supp. 2005); Tex. Gov't Code Ann.

4

§ 2001.174 (West 2000). Under substantial evidence review, we may affirm the agency's decision in whole or in part, or we may reverse the agency's decision if we determine that substantial rights of the appellant have been prejudiced because the agency's decision violates the constitution or a statute; exceeds the agency's statutory authority; was made through unlawful procedure; or, was affected by other error of law. Tex. Gov't Code § 2001.174. When conducting a substantial evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the action in dispute. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1998). The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). In determining whether there is substantial evidence to support the agency's decision, we may not substitute our judgment as to the weight of the evidence on questions committed to agency discretion. *Id.* We presume that the agency's order is supported by substantial evidence, and the challenging party bears the burden to demonstrate otherwise. *Id.* at 453. So long as there is a reasonable basis for the agency's order in the record, we must uphold the agency's order. *Id.* at 452.

***Statutory changes***

We note at the outset that section 823.157 of the insurance code—the statutory provision at issue in this appeal—has been amended and was recently codified as part of the legislature's ongoing process to re-organize Texas statutes. Prior to 2001, section 823.157 appeared

5

as article 21.49-1, section 5(c)(1), of the insurance code.[3] Article 21.49-1, section 5(c)(1), provided that "[t]he commissioner *shall approve* any acquisition or control referred to in Subsection (a) *unless*, *after a public hearing* thereon, he finds that" the statutory requirements are not met.[4] During the 2001 legislative session, the legislature amended article 21.49-1, section 5(c)(1), to read:

> The commissioner shall approve or deny any acquisition or change of control referred to in Subsection (a) not later than the 60th day after the date the statement required by that subsection is filed. The 60-day period may be waived by the person filing the statement and the domestic insurer. On request of either the person filing the statement or the domestic insurer, the commissioner shall hold a public hearing on a denial . . . .[5]

There appears to be some confusion on Stark's part as to whether this 2001 amendment reflected a substantive statutory change or was merely the result of the legislature's continuing recodification process. We observe, however, that the 2001 legislature enacted this substantive amendment to article 21.49-1[6] and also codified the pre-amendment version into section

---

[3] Act of May 27, 1987, 70th Leg., R.S., ch. 813, § 2, 1987 Tex. Gen. Laws 2816, 2819 (repealed 2001) (current version at Tex. Ins. Code Ann. § 823.157 (West Supp. 2005)).

[4] *Id.* (emphasis added).

[5] Act of May 27, 1987, 70th Leg., R.S., ch. 813, § 2, 1987 Tex. Gen. Laws 2816, 2819, *amended by*, Act of May 8, 2001, 77th Leg., R.S., ch. 241, § 2, 2001 Tex. Gen. Laws 450, 450-51.

[6] *Id*.

823.157 of the insurance code.[7]  Then, in 2003, the legislature enacted a conforming amendment to section 823.157 to reflect the substantive change originally enacted in 2001.[8]

### Due process

In his first point of error, Stark complains that due process required the Commissioner to provide notice and a hearing on Stark's Form A application prior to taking any administrative action on the application.  We disagree.

The United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.  U.S. Const. amend XIV, § 1.  The Texas Constitution guarantees that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land."  Tex. Const. art. 1, § 19.  The Texas Supreme Court has found no meaningful difference between the federal Constitution's guarantee of due process and the Texas Constitution's guarantee of due course of law.  *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).  Thus, Texas courts have traditionally followed contemporary federal pronouncements on procedural due process issues.  *Id.* (citing *Mellinger v. City of Houston*, 3 S.W. 249, 252-53 (Tex. 1887)); *see also Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-61 (Tex. 1985); *Tarrant County v. Ashmore*, 635 S.W.2d 417, 422-23 (Tex. 1982).  Although we are not bound by federal due process jurisprudence,

---

[7]  Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, sec. 823.157, 2001 Tex. Gen. Laws 3658, 3702-03.

[8]  Act of May 20, 2003, 78th Leg., R.S., ch. 1276, § 10A.203, 2003 Tex. Gen. Laws 4158, 4234.  We cite to the current version of section 823.157 unless otherwise noted.

we consider federal decisions involving procedural due process to be persuasive authority when considering Texas's due course of law guarantee. *Than*, 901 S.W.2d at 929.

Our review of Stark's due process claim requires a two-part analysis. We must first determine whether Stark has asserted a liberty or property interest entitled to procedural due process protection. If so, we must determine what process is due. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972); *Collins v. Texas Natural Res. Conservation Comm'n*, 94 S.W.3d 876, 883 (Tex. App.—Austin 2002, no. pet.).

The parties do not dispute that due process required the Commissioner to provide notice and a hearing on Stark's Form A application to acquire Fidelity First. The dispute centers, instead, on the timing of the hearing required. Thus, the question of whether Stark has a protected liberty or property interest in the State's processing of his application to purchase Fidelity First is not before us, and we consider only whether the hearing held by the Commissioner satisfies the requirements of due process.

In the context of administrative proceedings, the Supreme Court has long held that due process does not require a hearing at any particular stage so long as the requisite hearing is held before the final administrative order becomes effective. *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950) (collecting cases); *see also Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n*, 863 S.W.2d 742 (Tex. App.—Austin 1993, writ denied). Unlike some legal rules, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Due process is flexible and calls only for those procedural

8

protections demanded by the particular circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Stark does not challenge the adequacy of the hearing provided by the Commissioner. The question here is solely one of timing. This case thus presents the same issue considered by the Supreme Court in *Mathews v. Eldridge*, namely "the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter." 424 U.S. at 333; *see also Dixon v. Love*, 431 U.S. 105, 112 (1977) (considering whether due process requires evidentiary hearing prior to the state's discretionary action of suspending or revoking a driver's license). We therefore apply the factors considered by the Supreme Court in *Mathews*:

> Identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The private interest at issue here is the approval of Stark's application to purchase Fidelity First. Although we recognize that Stark may not be made entirely whole if his application to purchase Fidelity First is later approved after an initial denial, we conclude that the Commissioner's denial of Stark's application to purchase a domestic insurance company is not the sort of deprivation considered by the Supreme Court in *Mathews* or *Dixon* that would require a

9

departure "from the ordinary principle . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *See Mathews*, 424 U.S. at 343; *Dixon*, 431 U.S. at 113 (citing *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)).

We next consider the risk of an erroneous deprivation and the probable value, if any, of additional procedural safeguards. *Id*. at 335. Essential to our evaluation of the administrative process is the nature of the relevant inquiry. *Id*. at 343. In determining whether to grant or deny Stark's Form A application, the Commissioner must consider the financial stability and expertise of the acquiring entity as well as the financial and regulatory impact the acquisition will have on the domestic insurance company. *See* Tex. Ins. Code Ann. § 823.157(b). In short, the statute requires the Commissioner to conduct a financial assessment of the proposed transaction based upon information submitted by the applicant—in this case, Stark. *See id.*

Like the medical assessment required in *Mathews*, the financial assessment required of the Commissioner is "a more sharply focused and easily documented decision." *See* 424 U.S. at 343. In most cases, the Commissioner's decision will turn upon routine or standard information and financial reports submitted by the applicant as part of the Form A application itself. *See* Tex. Ins. Code Ann. §§ 823.154, .157 (West Supp. 2005); *see also* 28 Tex. Admin. Code §§ 7.205, .209. Under these circumstances, issues of credibility and veracity will not be a critical factor in the Commissioner's financial assessment and ultimate decisionmaking process. *Compare Richardson v. Perales*, 402 U.S. 389, 404 (1971) (recognizing the "reliability and probative worth of written medical reports"), *with Goldberg*, 397 U.S. at 269 (finding that written submissions provide an unsatisfactory basis for decisions that turn upon issues of witness credibility and veracity). In this

10

context, we agree with the Supreme Court that the potential value of an evidentiary hearing is substantially lessened. *See Mathews*, 424 U.S. at 344-45.

The record in this case demonstrates that Stark had ample opportunity to submit all of the necessary information to the Commissioner before the Commissioner issued the first official order denying Stark's application. Stark submitted his Form A application to the Commissioner in July 2003. The Commissioner's rules required Stark to submit detailed biographical and financial information, as well as a proposed business and operational plan for the domestic insurer, as part of his Form A application. *See* 28 Tex. Admin. Code § 7.205. The Commissioner requested additional information and written documentation from Stark on four separate occasions, and Stark responded to each of these requests. Thus, it is clear that the administrative process employed by the Commissioner in considering whether to approve Stark's acquisition of Fidelity First was controlled in large part by the written submissions provided by Stark himself.

There is no concern here that the written submissions provided by Stark would be an ineffective means of communicating his case to the decisionmaker. In contrast to the welfare recipients in *Goldberg*, persons like Stark who seek to acquire a domestic insurance company will likely have both the "educational attainment necessary to write effectively" and the ability to afford professional assistance. *See* 327 U.S. at 269. In this case, Stark was represented by counsel from the date he originally submitted his Form A application to the Commissioner to the date of the Commissioner's final order and throughout his appeals. Most, if not all, of the information provided in Stark's Form A application and his supplemental responses to the Commissioner was prepared by counsel or someone with the financial expertise necessary to address the Commissioner's

11

inquiries. Given these circumstances, we conclude that the risk of an erroneous deprivation in the absence of a prior evidentiary hearing is minimal, and the probable value, if any, of additional or substitute procedural safeguards is negligible at best.

In determining the appropriate process due in this context, the last factor in our analysis is the public interest. *See Mathews*, 424 U.S. at 335. This factor includes both fiscal and administrative burdens, as well as other costs associated with requiring, as a matter of constitutional right, an evidentiary hearing prior to the Commissioner's initial decision on a Form A application. *See id*. at 347. The most obvious burden would be the incremental cost and expense of providing each applicant with an evidentiary hearing prior to the Commissioner's initial action on an application. But this increased burden would not necessarily bring with it any added benefit. The requirement to provide each applicant with an evidentiary hearing prior to administrative action on a Form A application will create additional delays in the process, which may ultimately outweigh any added benefit of a prior hearing. Although the actual hearing in this case took only two days, it was not held until almost a full year after Stark originally submitted his application to the Commissioner. As the Supreme Court recognized in *Mathews*, "experience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." *Id.*

Of course, financial considerations alone do not control the outcome. We must also consider the government's, and hence the public's, interest in conserving scarce fiscal and administrative resources. *Id.* at 348. At some point, the benefit of providing additional safeguards to individuals potentially affected by adverse administrative action may be outweighed by the cost.

12

*Id*. In striking the appropriate due process balance, we ask when, under our constitutional system, we must impose judicial-type procedures upon administrative action to ensure fairness. "The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." *Id.*

The legislature has spoken to the appropriate balance in this context. The insurance code allows the Commissioner to act upon a Form A application without the need for an evidentiary hearing in every case. *See* Tex. Ins. Code Ann. § 823.157. Our determination of what due process is constitutionally required in this case is guided by the legislature's policy choice, reflected in the 2001 statutory amendment to section 823.157, and the Commissioner's rules, which provide an applicant like Stark with an opportunity to present all of the information necessary for approval of his Form A application prior to any administrative action. We note that the prescribed procedures also provide Stark with the right to an evidentiary hearing in the event his application is denied, as well as subsequent judicial review, before the denial of his application becomes final. *See Mathews*, 424 U.S. at 349. For these reasons, we conclude that the Commissioner was not required to provide an evidentiary hearing prior to his initial denial of Stark's Form A application and that the procedures employed by the Commissioner in evaluating Stark's application fully comported with due process as required by both the United States and Texas Constitutions. We overrule Stark's first issue.

### 60-day period

In his second issue, Stark complains that the plain language of section 823.157 of the insurance code required the Commissioner to act upon Stark's Form A application within 60 days

13

after Stark submitted the application, regardless of whether the application was complete. *See* Tex. Ins. Code Ann. § 823.157. Stark further complains that the Commissioner's failure to act within the 60-day period deprived the Commissioner of jurisdiction to take any subsequent action on Stark's application. The Commissioner responds that Stark's application never triggered the 60-day time period in section 823.157 because it was never complete and, therefore, was never deemed *filed* within the meaning of the statute. *See id.*; 28 Tex. Admin. Code §§ 7.205, .209. Accordingly, the Commissioner asserts that he was not required to act upon Stark's Form A application within 60 days and any failure to act within the 60-day period does not deprive him of jurisdiction to take action at a later date. The Commissioner's denial of Stark's application was based on his construction of section 823.157. *See* 28 Tex. Admin. Code §§ 7.205, .209.

The proper construction of section 823.157 is a question of law, which we review *de novo*. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 564 (Tex. App.—Austin 2006, pet. filed) (op. on reh'g). When construing a statute, our primary objective is to determine and give effect to the legislature's intent. *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996). We give serious consideration to an administrative agency's construction of the statute it is charged with enforcing, so long as the agency's construction is reasonable and consistent with the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993).

An administrative agency's interpretation of its own regulations is also entitled to deference by the courts. *Public. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991). "Our review is limited to determining whether the administrative interpretation is plainly

14

erroneous or inconsistent with the regulation." *Id.* We will reverse an administrative action as arbitrary and capricious only if the agency fails to follow the clear, unambiguous language of its own regulation. *Power Res. Group, Inc. v. Public Util. Comm'n*, 73 S.W.3d 354, 357 (Tex. App.—Austin 2002, pet. denied).

Section 823.157(a) provides:

> The commissioner shall approve or deny an acquisition or change of control for which a statement is filed under section 823.154 not later than the 60th day after the date the statement required by that section is filed. The 60-day period may be waived by the person filing the statement and the domestic insurer. On the request of either the person filing the statement or the domestic insurer, the commissioner shall hold a hearing on a denial.

Tex. Ins. Code Ann. § 823.157. Under the Commissioner's interpretation of section 823.157, a Form A application is not considered to be *filed* within the meaning of the statute until it is complete, or until "the date all such material required and sufficient to constitute a full statement has been provided." 28 Tex. Admin. Code § 7.205(b).

Stark argues that he filed his Form A application within the meaning of section 823.157 on July 14, 2003, and that the Commissioner's final order recites that Stark's application was filed on that date. In support of his position, Stark refers us to finding of fact number one in the Commissioner's final order, which reads "On July 14, 2003, the Applicant filed a Form A acquisition for control of Fidelity First with the Department."

The Commissioner responds that even though this finding of fact states that Stark's application was filed with the Department on July 14, 2003, it means only that the Department received Stark's application on that date, not that the application was *filed* within the meaning of

15

section 823.157. Commissioner witnesses Betty Patterson and Diane Nowak testified that Stark never submitted required documentation regarding the licensing status of his proposed managing general agent, a commitment letter from his proposed reinsurer, or the policy forms to be used by Fidelity First. Nowak also testified that Stark failed to provide sufficient financial information regarding the nature, source, and amount of the purchase money funds to acquire Fidelity First. Thus, Nowak testified that the Commissioner never considered Stark's Form A application to be filed within the meaning of section 823.157 because it was never complete.

The legislature has delegated broad authority to the Commissioner to implement Chapter 823 of the insurance code. Tex. Ins. Code Ann. § 823.012 (West Supp. 2005). The Commissioner may adopt rules and establish procedures regarding the conducting of business and proceedings in order to take appropriate actions authorized by statute. *Id*. The Commissioner has exercised this authority to adopt rules regarding Form A applications to acquire domestic insurance companies. *See* 28 Tex. Admin. Code §§ 7.205, .209.[9] Section 7.205(b) of the Commissioner's rules states, "No statement required by subsection (a) of this section shall be deemed filed with the commissioner until on the date all such material required and sufficient to constitute a full statement has been provided." *Id*. § 7.205(b). This rule also provides that "[a] failure to file complete and accurate information in all material respects is grounds for a denial by the commissioner." *Id*. § 7.205(a). Stark's failure to file a complete Form A application was sufficient grounds under the rule for the Commissioner to deny his application to purchase Fidelity First.

---

[9] Although rules 7.205 and 7.209 were adopted prior to the codification and amendment of section 823.157 in 2001 and 2003, Stark does not challenge the applicability of those rules. Therefore, that question is not before us and we do not address it.

The Commissioner's rules are a reasonable construction of section 823.157 and do not contradict the plain language of the statute. We conclude the Commissioner acted within his discretion to find that Stark's application was incomplete and did not trigger the running of the 60-day time period. To hold otherwise would lead to absurd results and encourage gamesmanship.[10] This we decline to do.

To the extent that Stark contends the Commissioner's rules fail to give effect to the waiver provision in section 823.157, we reject this contention. The waiver provision remains operable under the Commissioner's construction of section 823.157 because the parties may still agree to waive the 60-day period once a complete Form A application has been submitted to the Commissioner. We overrule Stark's second issue.

*Substantial Evidence*

In his two remaining issues, Stark attacks the evidentiary basis of the Commissioner's final order. Stark complains that the record evidence and testimony establish that Stark's application met all of the regulatory standards for approval and that the Commissioner's order is not supported by the evidence.

The legislature has charged the Commissioner with determining whether Stark's Form A application met the regulatory standards for approval. *See* Tex. Ins. Code Ann. § 823.157. We review the Commissioner's decision under the substantial evidence rule. *See id*. §§ 36.201 (an

---

[10] At oral argument, counsel for the Commissioner argued that, under Stark's interpretation of the statute, an applicant could trigger the 60-day period by filing one piece of paper regardless of whether it included all of the information required in a Form A application. *See* 28 Tex. Admin. Code § 7.209.

17

action subject to judicial review includes a decision, order, or other ruling of the Commissioner); .203 (judicial review of the Commissioner's action is under the substantial evidence rule in Chapter 2001, Government Code); Tex. Gov't Code Ann. § 2001.174.

Stark claims that the record evidence and testimony demonstrate that his Form A application met the regulatory standards for approval. In support of this claim, Stark asserts that the Oklahoma Department of Insurance approved his Form A application to acquire an Oklahoma domestic insurance company, and that he was using the same business model here in his Form A application to acquire Fidelity First. Regardless of whether Stark's proposed business model complied with Oklahoma law, it was incumbent upon the Commissioner to determine regulatory compliance with Texas law. Based on the evidence that Stark submitted, the Commissioner concluded that Stark's application failed to meet the regulatory standards in section 823.157. Because this question was committed to the Commissioner's discretion, we decline to substitute our judgment for that of the Commissioner. *See Texas Health Facilities Comm'n*, 665 S.W.2d at 452.

Commissioner witness Diane Nowak testified that Stark failed to provide the necessary materials to complete his Form A application: Stark failed to provide a commitment letter from any reinsurer; the managing general agent that Stark proposed to use was not licensed in Texas or in any other state; and Stark failed to provide the policy forms to be used by Fidelity First. Nowak also testified that Stark failed to demonstrate the nature, source, and amount of funds or other consideration that would be used to fund the purchase of Fidelity First. On this record, we conclude that the Commissioner's order was amply supported by substantial evidence. *See id*. We overrule Stark's third and fourth issues.

## CONCLUSION

The plain language of section 823.157 requires notice and a hearing only in the event the Commissioner first denies a Form A application. *See* Tex. Ins. Code Ann. § 823.157. We conclude that this legislative policy choice does not violate due process, and the Commissioner was not required to provide notice and a hearing prior to taking action on Stark's application to acquire Fidelity First. We also conclude that the Commissioner acted within his authority under Chapter 823 of the insurance code and that his final order was supported by substantial evidence. Therefore, we affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 7, 2006