## TEXAS RIVERS PROTECTION ASSOCIATION and William Perkins, Appellants,

v.

## TEXAS NATURAL RESOURCE CONSERVATION COMMISSION and Upper Guadalupe River Authority, Appellees.

No. 03–95–00070–CV.

Court of Appeals of Texas, Austin.

Nov. 1, 1995.

Rehearing Overruled Dec. 13, 1995.

William G. Bunch, Austin, for appellants.

Dan Morales, Attorney General, Rande K. Herrell, Assistant Attorney General, Natural Resources Division, Austin, for Texas Natural Res. Con. Comm.

Robert Wilson, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for Upper Guadalupe River Authority.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellants, Texas Rivers Protection Association ("TRPA") and William Perkins, complain that appellee Texas Natural Resource Conservation Commission[1] ("the Commission") improperly granted appellee Upper Guadalupe River Authority ("UGRA") a permit to divert water from the Guadalupe River· at a point near Kerrville, Texas. The Commission accepted a hearing examiner's proposal to grant the permit, and the district court affirmed the Commission's order. Appellants assert various points of error challenging the sufficiency of the evidence supporting the permit and the Commission's legal authority to issue it. We will affirm the trial court's judgment.

## BACKGROUND

The City of Kerrville ("the City") is located on the banks of the upper Guadalupe River. Prior to 1981, the City met all its water needs from a well system drawing groundwater from the Lower Trinity aquifer. In 1981, the Commission granted a permit ("permit 3505") to UGRA for the diversion of up to 3603 acre-feet per year of water from the Guadalupe River for use by the City. UGRA diverts water from a reservoir formed by a dam it operates on the river at Kerrville. Since 1981, the City has satisfied its water needs primarily from river water·diverted by UGRA. In July 1991, UGRA applied to the Commission for a second permit . ("permit 5394") allowing it to divert an additional 4760 acre-feet of water annually from the river for use by the City. UGRA plans to immediately use some of the water diverted under the new permit for the City and store the remainder in the Hosston–Sligo aquifer, which lies directly below the City. UGRA decided to use this aquifer storage and recovery ("ASR") technique to avoid the expense of an artificial reservoir and to prevent the evaporation that attends surface water storage.

In August 1991, UGRA amended its application for permit 5394 due to revised population forecasts for the City and Kerr County. Although it requested the same amount of water as under the original application, UGRA modified the uses to which the water would be put. UGRA indicated that some portion of the water would be used to meet the needs of Kerr County entities other than the City. The amended application noted Kerrville's willingness to become a regional water supplier. UGRA stated that the water demand from the non-Kerrville portion of Kerr County justified the level of water it continued to request.

A Commission examiner conducted extensive hearings on the application between

---

1. Formerly the Texas Water Commission.

June 1992 and February 1993. Appellants participated as parties to the administrative hearings and vigorously challenged the application. Appellants contended that the Texas Water Code and common law prohibit the ASR plan, that the need for water outside the City was speculative and therefore that portion of the diversion improper, and that the total rate of diversion proposed by UGRA would harm their aesthetic, recreational, and business interests in the affected portion of the Guadalupe River. The examiner recommended that the Commission grant the amended application, and the Commission issued permit 5394 to UGRA in October 1993.

The permit as issued by the Commission contains many provisions that vary from UGRA's application requests. The permit allows UGRA to divert only 4169 acre-feet of water annually, apportioned as follows: 1100 for Kerrville, 1661 for Kerr County entities other than Kerrville, and 1408 for injection into the aquifer to assure a constant level of water supply even in times of drought. The permit also contains significant "flow rate" protections for the river users downstream of the diversion point. When water is diverted from the reservoir at the UGRA dam, less water is available to run downstream and the depth and flow speed of the river change. The Commission issued permit 5394 with significantly more flow rate restrictions than suggested by UGRA.

### STANDING

As a preliminary matter, UGRA challenges appellants' standing to seek judicial review of the permit. The trial court overruled UGRA's plea in abatement on the issue of standing, and UGRA complains on appeal that the trial court erred in finding that appellants proved harm or injury from the permit sufficient to confer standing for judicial review.

The Administrative Procedure Act ("APA") provides that a losing party in a contested administrative case may, after exhausting administrative remedies, seek judicial review if the party is "aggrieved" by the agency's action. Tex.Gov't Code Ann. § 2001.171 (West 1995). That a party had

standing before the agency does not necessarily mean that it has standing for judicial review; the right to participate in administrative proceedings is construed quite liberally to encourage varying points of view. *Fort Bend County v. Texas Parks & Wildlife Comm'n,* 818 S.W.2d 898, 899 (Tex.App.— Austin 1991, no writ). In this case, however, the standing test used by the Commission also satisfies the APA's requirement that the party be "aggrieved." Commission rules confer standing upon any party with a "justiciable interest in the matter being considered...." 30 Tex.Admin.Code § 267.1 (1995). The supreme court has declared that a party is "aggrieved," for purposes of the APA, if the party can show a justiciable interest in the contested matter. *Hooks v. Texas Dep't of Water Resources,* 611 S.W.2d 417, 419 (Tex.1981).

We find that the record amply supports the determination by the Commission and district court that appellants have shown a justiciable interest in the permit. The permit, if upheld, would divert water from the Guadalupe River in derogation of appellants' uses. Both appellant Perkins and TRPA member Roy Vance own property fronting the affected area of the river, with attendant riparian rights. Perkins and Vance both testified that the water diversion caused by the permit would injure their aesthetic and recreational interests in the river. Perkins and TRPA member Thomas Goynes also conduct canoeing trips on the affected area of the river and testified that diversion under the permit would harm their business opportunities.

UGRA argues that these interests are insufficient to show standing since appellants did not have any particularized "vested" property rights in the river, by which they apparently mean permits for recreational or business uses of the river. We disagree. Appellants' riparian ownership alone sufficiently distinguishes their injury from that of the public at large. *See Hooks,* 611 S.W.2d at 419 (riparian owners with no other property interest in a creek had standing to challenge permit allowing waste discharge). An injury need not affect "vested" property

rights to confer standing; the harm may be economic, recreational, or environmental. *City of Bells v. Greater Texoma Util. Auth.,* 790 S.W.2d 6, 11 (Tex.App.—Dallas 1990, writ denied). Because the record amply discloses potential harm to appellants, we hold that the trial court properly determined that appellants have standing to pursue judicial review of the permit.[2]

## DISCUSSION ON THE MERITS

Appellants challenge the permit on two grounds: (1) the Commission did not have the legal authority to issue the permit, and (2) the Commission's findings are not supported by substantial evidence in the record. We will first consider the questions of law and then turn to a substantial evidence review.

### Questions of law

■ In points of error one, two, and five, appellants argue that the ASR method of water storage violates the Water Code[3] as well as the common law. Assuming a proper use for the water, appellants concede that the amount of water to be diverted is within the Commission's discretion and that storage of the water in an artificial container, even below ground, would be proper. However, appellants contend that the Commission committed legal error by granting the permit because it allows storage of water in a natural aquifer and because that storage will recharge the aquifer. *See* Tex.Gov't Code Ann. § 2001.174(2) (West 1995). UGRA responds that the Code clearly authorizes the appropriation and storage of surface water for municipal purposes, and the fact that the water is stored in a natural aquifer and incidentally recharges the aquifer does not make the permit improper. In an appeal governed by the APA, we exercise *de novo*

review over questions of law. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.), *cert. denied,* —— U.S. ——, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994).

■ Appellants argue in their first point of error that the permit is invalid because it contemplates aquifer recharge as one use of the water; they contend that aquifer recharge is not an authorized beneficial use of state water except as specifically provided in the Code. *See* Code § 11.023. Appellants' argument misses the mark for two reasons: the statute which appellants cite applies only to the Edwards aquifer, and aquifer recharge is only an incidental use of the water in the instant permit, not the primary use. By its plain terms, section 11.023(c) applies only to the Edwards aquifer. *Id.* Because this appeal does not concern the Edwards aquifer, section 11.023(c) is not applicable.

Even if the Code could be construed to forbid the diversion of state water to recharge other aquifers, the permit would still not be invalid since any recharge of the aquifer would only be incidental to the primary use of the water. The permit appropriates water for municipal use, and the Code authorizes storage of water for municipal use. Code § 11.023(a)(1). By the plain terms of the permit, the purpose of injecting the water into the aquifer is for storage, with recharge being only an incidental occurrence. Section 11.023(c) of the Code restricts the circumstances in which water may be appropriated for the *primary* purpose of Edwards aquifer recharge. Code § 11.023(c). Even if that provision could be read to apply to other aquifers, it would not forbid the injection of water into an aquifer for the primary purpose of storage for municipal use.[4] The incidental recharge contemplated by this permit does not detract from the

---

2. We note that appellant TRPA is subject to the three-part test for associational standing set forth in *Texas Ass'n of Business v. Air Control Bd.,* 852 S.W.2d 440, 447 (Tex.1993). The only contested issue in this case, however, is whether any member has standing to sue in an individual capacity; the record shows that TRPA easily satisfies the two remaining prongs of the test. Because we have found that at least one TRPA member, Mr. Vance, would have standing to sue in his own right, TRPA satisfies the test for associational standing.

3. Tex.Water Code Ann. §§ 1.001–151.164 (West 1988 & Supp.1995). For the sake of simplicity, the Water Code will be subsequently cited as "the Code."

4. We express no opinion as to whether the Code allows water to be used for the primary purpose of recharging an aquifer other than Edwards.

primary use of the water for municipal purposes, which the Code prioritizes as the most important beneficial use of state water. Code § 11.024(1). We overrule appellants' first point of error.

■ In their fifth point of error, appellants argue that the permit is invalid because it lists the water's uses as "municipal and recharge." Appellants argue that storage for the purpose of recharge is a use separate from municipal use and that storage in itself is not an authorized use of water. Appellants also argue that the permit is invalid because UGRA's application did not use the word "recharge" in its description of the ASR procedure, and thus violated permit requirements under the Code. Both arguments are without merit. The record clearly indicates that the word "recharge" as used in the permit, describes a side effect of storing water in an aquifer. Because UGRA's application clearly indicated its intent to store the water in an aquifer, UGRA complied with the statutory requirement to "state the nature and purposes of the proposed use and the amount of water to be used for each purpose...." Code § 11.124(a)(4). Appellants' attempt to characterize this storage as a use distinct from municipal use is similarly misplaced. Both UGRA's application and the permit clearly indicate that aquifer storage is incidental to, and in furtherance of, the municipal use. The water is to be stored for later municipal needs, as opposed to current needs. The Code clearly allows the storage of water for later municipal use. Code § 11.023(a)(1). Appellants' fifth point of error is overruled.

■ In their second point of error, appellants argue that the permit is improper because water injected into an aquifer becomes groundwater outside the control of the state. Appellants contend that the Commission erred in its legal conclusion that the state would retain title to water injected into the aquifer. Further, appellants contend that the determination of title to the water is crucial and argue that the Commission cannot issue a permit authorizing the transformation of state water into groundwater, thereby subjecting the water to the common-law rule of capture governing groundwater.

See, e.g., City of Sherman v. Public Util. Comm'n, 643 S.W.2d 681, 686 (Tex.1983); Houston & Tex. Cent. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279, 280 (1904). We reject appellants' argument because the beneficial use of water, and not title, controls the legality of a state water diversion permit.

■ The gravamen of appellants' argument is that water cannot be put to beneficial municipal use, as a matter of law, if it has become groundwater subject to the rule of capture. As a general rule, the Code gives the state the right to exclude others from using surface water, while groundwater is subject to capture by private landowners. See Code §§ 11.021, 52.002. However, the right to exclude other users is not the legal touchstone of a diversion permit. The Code provides that a permit is properly granted if "the proposed appropriation contemplates the application of water to any beneficial use...." Code § 11.134(b)(3)(A); see also Code § 11.023(b) (providing that state water may be appropriated, diverted, or stored for any beneficial use). Thus, beneficial use is the yardstick by which to measure the legality of a permit. Even if the state stores water in a manner that negates its right to exclude private takers, a permit will stand if the water is actually put to a beneficial use. The characterization of stored water as groundwater subject to the rule of capture does not invalidate a permit as a matter of law. Appellants have failed to show, as a factual matter from the record, that the aquifer storage plan authorized by permit 5394 will prevent beneficial use of the water. Therefore, we hold that the ASR plan does not invalidate this permit. We overrule appellants' second point of error.

■ In their sixth point of error, appellants contend that the permit is invalid because it does not require diligent construction of diversion and storage facilities, and because it allows for cancellation of rights to divert any water not subject to a supply contract by the year 2010. We disagree. The Code requires that facilities proposed for construction under a direct diversion permit must be diligently constructed once begun. Code § 11.145(a). However, there is no re-

quirement that the Commission put particular language in the permit concerning diligence. *See* Code § 11.135(b). Furthermore, the statute contemplates facilities that must be constructed to divert or store the water. *Id.* In this case, no such facilities are proposed because UGRA already has a dam in place and the aquifer will be used for storage instead of an artificial reservoir. The permit calls for the cancellation of the right to divert any portion of water not subject to contract by 2010, seventeen years after the issuance of the permit. The Code provides that a permit for water diversion may be cancelled in whole or in part, under certain circumstances, if water is not used within ten years after issuance of the permit. Code §§ 11.171–.186. The permit provision is valid because it merely adds a condition to those imposed by statute. If the statutory conditions are satisfied, the permit will be subject to cancellation in ten years. Even if not, the permit adds a seventeen-year condition that must be fulfilled in addition to the statutory requirements, not instead of them. We overrule point of error number six.

In points of error seven and eight, appellants complain that the permit is invalid because UGRA derived its right to appropriate water from a superior claimant. UGRA signed a subordination agreement with the Guadalupe–Blanco River Authority ("GBRA"), in which GBRA agreed to allow UGRA to use a portion of its water rights. Without this agreement, UGRA would not be able to divert water under permit 5394. Appellant argues that the permit is invalid because it purports to grant a perpetual water diversion right, while the subordination agreement expires in the year 2027. We disagree. The permit clearly states that it is "subject to all superior and senior water rights in the Guadalupe River Basin." If the subordination agreement is not renewed, UGRA will no longer have a right under the permit to divert the water. Similarly, appellant argues that the permit is invalid because GBRA never modified its permit to reflect the subordination agreement. We reject the argument because Commission rules require the amendment urged by appellant only when the contract calls for the seller to "supply" the water to the buyer by delivery or diversion. *See* 30 Tex.Admin.Code § 297.101 (1995). The subordination agreement is not such a "supply" contract because UGRA will divert and transport the water, not GBRA. GBRA uses its water for hydroelectric power generation but does not divert it. When water will first be diverted from its course, the party diverting the water must apply for a new permit. Code § 11.121; 30 Tex.Admin.Code § 297.21 (1995). GBRA did not need to amend its permit since it does not intend to divert water under the subordination agreement. UGRA, as the diverting party, properly filed its application for a new permit. Points of error seven and eight are overruled.

### Substantial evidence review

In their third and fourth points of error, appellants contend that several of the Commission's findings of underlying fact are not supported by substantial evidence in the record. Because the Code does not specify a scope of judicial review for water diversion permits, the APA governs this appeal. Tex. Gov't Code Ann. § 2001.174 (West 1995). The APA's "substantial evidence" test provides that a court reviewing an agency action shall reverse and remand the cause to the agency when substantial rights of the appellant have been prejudiced and the agency's findings are not reasonably supported by substantial evidence considering the reliable evidence in the record as a whole. *Id.* at § 2001.174(2)(E). The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable "in light of the evidence from which they were purportedly inferred." John E. Powers, *Agency Adjudications* 163 (1990). We will sustain an agency's finding if reasonable minds could have reached the same conclusion. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex. 1984).

Appellants first attack the Commission's findings that water injected into the aquifer under the ASR plan will travel horizontally no more than 120 feet per year, remaining readily available for later use, and that the injected water will mix only minimal-

ly with native groundwater. These underlying findings support the Commission's ultimate finding that the water injected into the aquifer will subsequently be available for beneficial municipal use. We need not determine whether the finding of limited mixing is supported by substantial evidence because such a finding is irrelevant to the Commission's ultimate finding. Water is a fungible commodity. UGRA need not extract from the aquifer the very same water molecules that it injected into the aquifer. The relevant legal requirement is that the water be put to a beneficial use. This, in turn, requires a determination that the *quantity* of water put into the aquifer can be recovered and put to such use. The Commission found that this would be the case, based on its underlying finding that the injected water would move no more than 120 feet per year. We need test this finding only under the substantial evidence standard. As long as a properly supported finding given in the order supports an agency's action, we will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record. *Railroad Comm'n v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975).

 The record indicates that the aquifer in question is not an impermeable underground well. All parties agree that the top and bottom layers of the aquifer are impermeable rock, but the sides are permeable and allow lateral water flow. However, the parties dispute the rate of lateral water flow from the aquifer, and the record contains conflicting evidence on the issue. Two of UGRA's experts, John McLeod and Margaret O'Hare, testified that the rate of horizontal flow would remain at or below 120 feet per year, which would adequately confine the water for purposes of the proposed ASR program. Steve Musick, an expert with the Texas Water Commission, testified that water injected into the aquifer would remain well confined and would radiate at a velocity of about 100 feet per year. An expert for appellants, William Harvey, calculated a far higher horizontal flow rate for water in the aquifer. In rebuttal, UGRA's expert Kevin Bral challenged both Mr. Harvey's methodology and calculations.

We conclude that the Commission's findings that water injected into the aquifer will move horizontally at a rate of approximately 120 feet per year and thus be readily recoverable when needed are supported by substantial evidence in the record viewed as a whole. The credible evidence preponderates in favor of the findings, and reasonable minds could readily reach the conclusion made by the Commission. We overrule appellants' fourth point of error.

 In their third point of error, appellants attack the portion of the permit allocating water to Kerr County entities other than the City of Kerrville. Appellants contend that there is not substantial evidence to support a finding that the water diverted for the non-Kerrville users will actually be used in those communities; appellants urge that this portion of the permit is based on speculation. In formal terms, appellants challenge the Commission's ultimate finding that the water for the non-Kerrville entities will be put to beneficial use, as required by the Code. Code § 11.134(b)(3)(A).

Our review of the record discloses significant evidence, and not mere speculation, supporting the Commission's finding that water under the permit will be used beneficially by non-Kerrville entities. UGRA's expert projections of population and water demand for Kerr County show a need for the level of water diverted under the permit. By ordinance, the City has indicated its willingness to supply water to other Kerr County entities. At considerable expense, the City has extended pipelines to its territorial limits to facilitate supply to nearby communities.

 Appellants respond that Kerrville has no contracts for water supply to other Kerr County entities and that the record is devoid of evidence indicating that any such entities will be interested in or able to obtain water from Kerrville. We find these arguments unpersuasive. The existence of a supply contract is not required to show that water appropriated for third parties will be put to a beneficial use. *See Texas Water Rights Comm'n v. City of Dallas,* 591 S.W.2d 609, 610–11 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e); *City of Frisco v. Texas Water*

*Rights Comm'n,* 579 S.W.2d 66, 72 (Tex. App.—Austin 1979, writ ref'd n.r.e.). The City of Ingram, which is the largest water user in Kerr County besides Kerrville, wrote a letter to UGRA expressing interest in water appropriated under the permit.[5] UGRA's witnesses indicated that water supply from Kerrville to other Kerr County communities is not only practically feasible but inevitable.

We hold that there is substantial evidence in the record to support the Commission's finding that water under the permit will be beneficially used by non-Kerrville entities. Given the evidence discussed above, we conclude that reasonable minds could agree with the Commission's conclusion that the water allocated under the permit to non-Kerrville entities will be put to a beneficial use. We overrule appellants' third point of error.

## CONCLUSION

For the reasons given, we find no error by the Commission. Therefore, we affirm the judgment of the district court.

---

5. Appellants contend that UGRA's response to the letter shows that the water will not be used for the non-Kerrville entities. We disagree. *UGRA declined to supply water to Ingram directly because it had a primary obligation to Kerrville, and UGRA thought that Kerrville would require all water appropriated under the permit.* This exchange took place in 1989. Subsequently, UGRA determined that Kerrville would not require all the water it plans to divert and, therefore, has now determined that it can supply Ingram with water, either directly or through Kerrville as intermediate supplier.