TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00199-CV






Residential Information Services Limited Partnership, Appellant



v.



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas,


and John Cornyn, Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-10302, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING







 Appellant, Residential Information Services Limited Partnership ("RIS"), brought
suit against appellees, the Comptroller of Public Accounts and the Attorney General, (1)
 for a refund
of sales taxes paid for the termination of a computer equipment lease. After hearing cross-motions
for summary judgment, the trial court granted the summary judgment motion in favor of the
Comptroller and denied the summary judgment motion by RIS. RIS brings this appeal. In its sole
issue presented RIS argues that its lease termination payment is not subject to Texas sales tax. We
will affirm the trial court's judgment.


BACKGROUND


 In 1989, RIS's predecessor in interest, Lomas Information Systems ("Lomas"),
entered into an agreement with IBM Credit Corporation ("IBM") to lease computer equipment. (2) 
Lomas paid Texas sales tax on each lease installment as it became due. In 1994, RIS took an
assignment of Lomas's interest in the lease; in doing so, RIS agreed to assume and discharge all
existing and future duties and obligations of Lomas under the lease. RIS continued to pay the
lease installments, including sales tax, until 1996 when RIS negotiated with IBM to terminate its
lease obligations. IBM agreed to terminate RIS's lease in exchange for payment of $11,641,441
and return of the equipment. In addition to this termination payment, IBM collected from RIS
$943,103.28 in Texas sales tax on the payment which it remitted to the Comptroller. RIS
requested from the Comptroller a refund of this sales tax, arguing that the lease termination
payment should not have been taxed because it was not a part of the original lease price. The lease
refers to RIS's tax obligations as follows:


TAXES. Lessee shall promptly reimburse Lessor for, or shall pay directly if so
requested by Lessor, as additional Rent, all taxes, charges, and fees imposed or
levied by any governmental body or agency upon or in connection with the
purchase, ownership, leasing, possession, use or relocation of the Equipment or
Programming or in connection with the financing of LPM Charges or otherwise in
connection with the transactions contemplated by the Lease, excluding, however,
all taxes on or measured by the net income of Lessor. 


(Emphasis added.)



 RIS contends that the termination payment was not made "in connection with the
purchase." It argues that the termination agreement was an independent transaction, and that RIS
made the payment solely for the intangible benefit of extinguishing its future contractual
obligations. The Comptroller denied RIS's request for a refund. RIS brought suit, and appeals
the trial court's grant of the Comptroller's motion for summary judgment.


STANDARD OF REVIEW

 We review a summary judgment under well established precepts: (1) the movant
has the burden of showing that there is no genuine issue of fact and that the movant is entitled to
summary judgment as a matter of law; (2) in deciding whether a disputed fact issue exists, the
evidence favorable to the non-movant will be taken as true; and (3) the non-movant should benefit
from any inference or doubt. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Because the trial court granted summary judgment by general order, we will
affirm if the judgment is supported by any of the legal theories presented by the Comptroller. See
State Farm Fire & Casualty Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). We review
the issues of law de novo. See Texas Rivers Protection Assoc. v. Texas Natural Resource
Conservation Comm'n, 910 S.W.2d 147, 152 (Tex. App.--Austin 1995, no writ).


DISCUSSION

 In determining whether the Comptroller properly taxed the lease termination
payment, RIS urges that the crux of the dispute involves the characterization of the lease
termination payment itself--whether it is tangible or intangible. We agree with the Comptroller,
however, that the proper inquiry involves whether the lump-sum payment made by RIS to IBM
to terminate the lease was part of the overall price for the lease of computer equipment. We begin
our inquiry with the Texas Tax Code.

 The Texas Tax Code imposes sales tax on each sale of a taxable item in the state. 
Tex. Tax Code Ann. § 151.051(a) (West 1992). (3) The statute regards a lease of tangible personal
property as a taxable sale. Id. § 151.005. (4) Therefore, the lease of such tangible property as
computer equipment is considered a "sale" under the Tax Code, and is subject to sales tax. See
ADP Corp. v. Sharp, 921 S.W.2d 490, 492 (Tex. App.--Austin 1996, writ denied). The taxable
sales price of the leased property is the total amount for which the taxable item is leased. Tex.
Tax Code Ann. § 151.007(a)(1) (West 1992). (5)

 RIS does not dispute that the entire value of the lease is taxable, but argues that the
termination payment was not a part of the lease value. RIS contends that the termination payment
was merely a penalty paid for IBM's forgiveness of RIS's future contractual obligations, and thus
an intangible benefit. This distinction is important because only transactions involving tangible
goods are taxable; if the essence of the transaction is intangible, then the transaction is not taxable. 
See Bullock v. Statistical Tabulating Corp., 549 S.W.2d 166, 168 (Tex. 1977).

 The Comptroller takes a contrary approach, arguing that the tangible/intangible
distinction is a false premise. The Comptroller contends that the lease termination payment is
taxable because it was a payment contemplated in the amended lease agreement between the
parties. The Comptroller directs this Court to its agency rules to determine the nature of the lease
termination payment. Comptroller Rule 3.294(d) specifically indicates that all charges related to
a lease agreement are taxable, including "a charge imposed for the early termination of the lease." 
34 Tex. Admin. Code § 3.294(d) (1998). Additionally, Comptroller Rule 3.294(d)(5) makes clear
that "a charge imposed for the early termination of the lease is included in the lease price and is
taxable." Id. § 3.294(d)(5). The Comptroller reminds us that construction of a statute by the
administrative agency charged with its enforcement is entitled to serious consideration, so long
as the construction is reasonable and does not contradict the plain language of the statute. See
Dodd v. Meno, 870 S.W.2d 4, 7 (Tex. 1994); Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820,
823 (Tex. 1993). Therefore, the Comptroller argues that the Tax Code and its own agency rules
compel the determination that the termination payment was part of the overall leasing agreement,
and as such is taxable.

 Given the economic realities of the marketplace, we believe that the Comptroller
correctly views the termination payment as being an integral part of the lease agreement rather
than a penalty for forgiveness of future obligations. When IBM and Lomas originally bargained
for the lease of computer equipment, Lomas wanted to defer the full price of the computer
equipment by making periodic lease payments. IBM wanted to secure payment for its equipment
over a period of time so that it could recoup its original equipment costs and make a profit. 
Therefore, a lease made sense for both parties. Similar to a mortgage, negotiations between IBM
and Lomas regarding the amount of periodic payments depended upon the duration of the lease;
a shorter lease would require higher periodic payments, a longer lease produced lower payments. 
Because the termination payment necessarily reduces the duration of the lease and the number of
payments, when IBM and RIS negotiated the amount of the termination payment, they undoubtedly
considered the entire lease value and more importantly, the value of the lease had it been originally
negotiated for a shorter term. (6)

 The amount of the termination payment was not a punishment for early termination
per se, it merely reflected the increased cost of the lease had it been negotiated for a shorter term. 
Moreover, because the termination payment constituted the remaining portion of the original
transaction, (7) the entire transaction involved tangible property--i.e., computer equipment. 
Consequently, Comptroller Rule 3.294(d) is reasonable under these circumstances. It clarifies
but does not conflict with the plain language of the tax statute. It simply defines charges included
in the original lease price. We therefore give deference to the rule and we hold that the lease
termination payment was taxable as part of the original lease agreement.

 RIS also argues that Comptroller Rule 3.294(d) does not apply to this termination
agreement because this termination agreement was a separate, stand-alone transaction. While the
lease agreement does not contain a specific provision for early termination, it does contemplate
future modification and indicates that any such modifications should be outlined as supplements
to the lease agreement:


Any lease transaction requested by the Lessee and accepted by the Lessor shall be
specified in a Term Lease Supplement (Supplement). A Supplement shall refer to
and incorporate by reference this Agreement and, when signed by the parties, shall
constitute the lease (Lease) for the equipment specified therein.



The lease termination agreement was titled a "Supplement" and stated that "the terms of this
Supplement, any prior supplements and addenda related to the Leased or Financed Items, and the
Lease are the complete and exclusive statement of the agreement between the parties." As a
supplement to the original agreement, the termination payment was taxable according to the
Comptroller's Rule 3.294(d).


CONCLUSION The entire value of RIS's lease was subject to Texas sales tax. The payment made
for the early termination of the lease was part of the entire lease price. We therefore affirm the
judgment of the trial court that RIS is not entitled to a refund of the sales tax paid on the lease
termination payment.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: April 8, 1999

Publish




















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. As the interests of the Comptroller and the Attorney General do not diverge in this case, we
will refer to the State parties collectively as the Comptroller.

2. The designated lease term and rental price are absent from the record.
3. "A tax is imposed on each sale of a taxable item in this state." Tex. Tax Code Ann.
§ 151.051(a) (West 1992) (emphasis added).
4. "'Sale' or 'purchase' means any of the following when done or performed for consideration:
. . . (2) the exchange, barter, lease, or rental of tangible personal property." Tex. Tax Code Ann.
§151.005 (West 1992) (emphasis added).
5. "'[S]ales price' or 'receipts' means the total amount for which a taxable item is sold, leased,
or rented. . . ." Tex. Tax Code Ann. §151.007(a)(1) (West 1992) (emphasis added).
6. IBM must also consider the condition of the equipment when evaluating the costs associated
with an early termination of the lease. IBM is left with used, and most likely obsolete, computer
equipment. Naturally, the depreciation factor to be applied on the salvage value of the used
computer equipment would necessitate a much higher monthly payment for a lease of shorter
duration.
7. This Court has interpreted a similar contract as treating leased computer equipment as an
asset of the customer for accounting purposes with a value equal to the acquisition cost as stated
in the lease. See ADP Credit Corp. v. Sharp, 921 S.W.2d 490, 492 (Tex. App.--Austin 1996,
writ denied). This implies that the full value of the lease became taxable at the moment the
contract took effect.



 therefore give deference to the rule and we hold that the lease
termination payment was taxable as part of the original lease agreement.

 RIS also argues that Comptroller Rule 3.294(d) does not apply to this termination
agreement because this termination agreement was a separate, stand-alone transaction. While the
lease agreement does not contain a specific provision for early termination, it does contemplate
future modification and indicates that any such modifications should be outlined as supplements
to the lease agreement:


Any lease transaction requested by the Lessee and accepted by the Lessor shall be
specified in a Term Lease Supplement (Supplement). A Supplement shall refer to
and incorporate by reference this Agreement and, when signed by the parties, shall
constitute the lease (Lease) for the equipment specified therein.



The lease termination agreement was titled a "Supplement" and stated that "the terms of this
Supplement, any prior supplements and addenda related to the Leased or Financed Items, and the
Lease are the complete and exclusive statement of the agreement between the parties." As a
supplement to the original agreement, the termination payment was taxable according to the
Comptroller's Rule 3.294(d).


CONCLUSION The entire value of RIS's lease was subject to Texas sales tax. The payment made
for the early termination of the lease was part of the entire lease price. We therefore affirm the
judgment of the trial court that RIS is not entitled to a refund of the sales tax paid on the lease
termination payment.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: April 8, 1999

Publish




















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. As the interests of the Comptroller and the Attorney General do not diverge in this case, we
will refer to the State parties collectively as the Comptroller.

2. The designated lease term and rental price are absent from the record.
3. "A tax is imposed on each sale of a taxable item in this state." Tex. Tax Code Ann.
§ 151.051(a) (West 1992) (emphasis added).
4. "'Sale' or 'purchase' means any of the following when done or performed for consideration:
. . . (2) the exchange, barter, lease, or rental of tangible personal property." Tex. Tax Code Ann.
§151.005 (West 1992) (emphasis added).
5. "'[S]ales price' or 'receipts' means the total amount for which a taxable item is sold, leased,
or rented. . . ." Tex. Tax Code A