**RESIDENTIAL INFORMATION SERVICES LIMITED PARTNERSHIP, Appellant,**

v.

**Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas, and John Cornyn, Attorney General of the State of Texas, Appellees.**

No. 03–98–00199–CV.

Court of Appeals of Texas, Austin.

April 8, 1999.

Rehearing Overruled May 13, 1999.

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous- ton, participating by assignment.

Carroll Martin, Scott, Douglass & McConnico, L.L.P., Austin, for appellant.

John Cornyn, Atty. Gen., Jim B. Cloudt, Asst. Atty. Gen., Taxation Division, Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and POWERS.*

MACK KIDD, Justice.

Appellant, Residential Information Services Limited Partnership ("RIS"), brought suit against appellees, the Comptroller of Public Accounts and the Attorney General,[1] for a refund of sales taxes paid for the termination of a computer equipment lease. After hearing cross-motions for summary judgment, the trial court granted the summary judgment motion in favor of the Comptroller and denied the summary judgment motion by RIS. RIS brings this appeal. In its sole issue presented RIS argues that its lease termination payment is not subject to Texas sales tax. We will affirm the trial court's judgment.

## BACKGROUND

In 1989, RIS's predecessor in interest, Lomas Information Systems ("Lomas"), entered into an agreement with IBM Credit Corporation ("IBM") to lease computer equipment.[2] Lomas paid Texas sales tax on each lease installment as it became due. In 1994, RIS took an assignment of Lomas's interest in the lease; in doing so, RIS agreed to assume and discharge all existing and future duties and obligations of Lomas under the lease. RIS continued to pay the lease installments, including sales tax, until 1996 when RIS negotiated with IBM to terminate its lease obligations. IBM agreed to terminate RIS's lease in exchange for payment of $11,641,441 and return of the equipment. In addition to this termination payment, IBM collected from RIS $943,103.28 in Texas sales tax on the payment which it remitted to the Comp-

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. As the interests of the Comptroller and the Attorney General do not diverge in this case, we will refer to the State parties collectively as the Comptroller.

2. The designated lease term and rental price are absent from the record.

troller. RIS requested from the Comptroller a refund of this sales tax, arguing that the lease termination payment should not have been taxed because it was not a part of the original lease price. The lease refers to RIS's tax obligations as follows:

> TAXES. Lessee shall promptly reimburse Lessor for, or shall pay directly if so requested by Lessor, as additional Rent, *all taxes, charges, and fees imposed or levied by any governmental body or agency upon or in connection with the purchase, ownership, leasing, possession, use or relocation of the Equipment* or Programming or in connection with the financing of LPM Charges or otherwise in connection with the transactions contemplated by the Lease, excluding, however, all taxes on or measured by the net income of Lessor. (Emphasis added.)

RIS contends that the termination payment was not made "in connection with the purchase." It argues that the termination agreement was an independent transaction, and that RIS made the payment solely for the *intangible* benefit of extinguishing its future contractual obligations. The Comptroller denied RIS's request for a refund. RIS brought suit, and appeals the trial court's grant of the Comptroller's motion for summary judgment.

## STANDARD OF REVIEW

We review a summary judgment under well established precepts: (1) the movant has the burden of showing that there is no genuine issue of fact and that the movant is entitled to summary judgment as a matter of law; (2) in deciding whether a disputed fact issue exists, the evidence favorable to the non-movant will be taken as true; and (3) the non-movant should benefit from any inference or doubt. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Because the trial court granted summary judgment by general order, we will affirm if the judgment is supported by any of the legal theories presented by the Comptroller. *See State Farm Fire & Casualty Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex. 1993). We review the issues of law *de novo. See Texas Rivers Protection Assoc. v. Texas Natural Resource Conservation Comm'n,* 910 S.W.2d 147, 152 (Tex.App.—Austin 1995, no writ).

## DISCUSSION

■ In determining whether the Comptroller properly taxed the lease termination payment, RIS urges that the crux of the dispute involves the characterization of the lease termination payment itself—whether it is tangible or intangible. We agree with the Comptroller, however, that the proper inquiry involves whether the lump-sum payment made by RIS to IBM to terminate the lease was part of the overall price for the lease of computer equipment. We begin our inquiry with the Texas Tax Code.

■ The Texas Tax Code imposes sales tax on each sale of a taxable item in the state. Tex. Tax Code Ann. § 151.051(a) (West 1992).[3] The statute regards a lease of *tangible* personal property as a taxable sale. *Id.* § 151.005.[4] Therefore, the lease of such tangible property as computer equipment is considered a "sale" under the Tax Code, and is subject to sales tax. *See ADP Corp. v. Sharp,* 921 S.W.2d 490, 492 (Tex.App.—Austin 1996, writ denied). The taxable sales price of the leased property is the total amount for which the taxable item is leased. Tex. Tax Code Ann. § 151.007(a)(1) (West 1992).[5]

■ RIS does not dispute that the entire value of the lease is taxable, but argues that the termination payment was not a part of the lease value. RIS contends that the termination payment was merely a penalty paid for IBM's forgiveness of RIS's future

---

3. "A tax is imposed on each sale of a *taxable item* in this state." Tex. Tax Code Ann. § 151.051(a) (West 1992) (emphasis added).

4. " 'Sale' or 'purchase' means any of the following when done or performed for consideration: ... (2) the exchange, barter, *lease,* or rental of *tangible* personal property." Tex. Tax Code Ann. § 151.005 (West 1992) (emphasis added).

5. " '[S]ales price' or 'receipts' means the total amount for which a taxable item is sold, *leased,* or rented...." Tex. Tax Code Ann. § 151.007(a)(1) (West 1992) (emphasis added).

contractual obligations, and thus an *intangible* benefit. This distinction is important because only transactions involving *tangible goods* are taxable; if the essence of the transaction is *intangible*, then the transaction is not taxable. *See Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 168 (Tex. 1977).

The Comptroller takes a contrary approach, arguing that the tangible/intangible distinction is a false premise. The Comptroller contends that the lease termination payment is taxable because it was a payment contemplated in the amended lease agreement between the parties. The Comptroller directs this Court to its agency rules to determine the nature of the lease termination payment. Comptroller Rule 3.294(d) specifically indicates that all charges related to a lease agreement are taxable, including "a charge imposed for the early termination of the lease." 34 Tex. Admin. Code § 3.294(d) (1998). Additionally, Comptroller Rule 3.294(d)(5) makes clear that "a charge imposed for the early termination of the lease is included in the lease price and is taxable." *Id.* § 3.294(d)(5). The Comptroller reminds us that construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *See Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex.1994); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993). Therefore, the Comptroller argues that the Tax Code and its own agency rules compel the determination that the termination payment was part of the overall leasing agreement, and as such is taxable.

Given the economic realities of the marketplace, we believe that the Comptroller correctly views the termination payment as being an integral part of the lease agreement

rather than a penalty for forgiveness of future obligations. When IBM and Lomas originally bargained for the lease of computer equipment, Lomas wanted to defer the full price of the computer equipment by making periodic lease payments. IBM wanted to secure payment for its equipment over a period of time so that it could recoup its original equipment costs and make a profit. Therefore, a lease made sense for both parties. Similar to a mortgage, negotiations between IBM and Lomas regarding the amount of periodic payments depended upon the duration of the lease; a shorter lease would require higher periodic payments, a longer lease produced lower payments. Because the termination payment necessarily reduces the duration of the lease and the number of payments, when IBM and RIS negotiated the amount of the termination payment, they undoubtedly considered the entire lease value and more importantly, the value of the lease had it been originally negotiated for a shorter term.[6]

The amount of the termination payment was not a punishment for early termination *per se*, it merely reflected the increased cost of the lease had it been negotiated for a shorter term. Moreover, because the termination payment constituted the remaining portion of the original transaction,[7] the entire transaction involved tangible property—i.e., computer equipment. Consequently, Comptroller Rule 3.294(d) is reasonable under these circumstances. It clarifies but does not conflict with the plain language of the tax statute. It simply defines charges included in the original lease price. We therefore give deference to the rule and we hold that the lease termination payment was taxable as part of the original lease agreement.

RIS also argues that Comptroller Rule 3.294(d) does not apply to *this* termination

---

6. IBM must also consider the condition of the equipment when evaluating the costs associated with an early termination of the lease. IBM is left with used, and most likely obsolete, computer equipment. Naturally, the depreciation factor to be applied on the salvage value of the used computer equipment would necessitate a much higher monthly payment for a lease of shorter duration.

7. This Court has interpreted a similar contract as treating leased computer equipment as an asset of the customer for accounting purposes with a value equal to the acquisition cost as stated in the lease. *See ADP Credit Corp. v. Sharp*, 921 S.W.2d 490, 492 (Tex.App.—Austin 1996, writ denied). This implies that the *full value* of the lease became taxable at the moment the contract took effect.

agreement because this termination agreement was a separate, stand-alone transaction. While the lease agreement does not contain a specific provision for early termination, it does contemplate future modification and indicates that any such modifications should be outlined as supplements to the lease agreement:

> Any lease transaction requested by the Lessee and accepted by the Lessor shall be specified in a Term Lease Supplement (Supplement). A Supplement shall refer to and incorporate by reference this Agreement and, when signed by the parties, shall constitute the lease (Lease) for the equipment specified therein.

The lease termination agreement was titled a "Supplement" and stated that "the terms of this Supplement, any prior supplements and addenda related to the Leased or Financed Items, and the Lease are the complete and exclusive statement of the agreement between the parties." As a supplement to the original agreement, the termination payment was taxable according to the Comptroller's Rule 3.294(d).

### CONCLUSION

The entire value of RIS's lease was subject to Texas sales tax. The payment made for the early termination of the lease was part of the entire lease price. We therefore affirm the judgment of the trial court that RIS is not entitled to a refund of the sales tax paid on the lease termination payment.