ACCEPTED
15-25-00084-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/23/2025 9:32 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00084-CV**

IN THE FIFTEENTH DISTRICT COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/23/2025 9:32:39 AM
CHRISTOPHER A. PRINE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Appellant,*

v.

WILBARGER CREEK CONSERVATION ALLIANCE, MARILYN KELINSKE,
ANNE BROCKENBROUGH, and JONATHAN BEALL,
*Appellees.*

On Appeal from the 126th District Court of Travis County, Texas
Cause No. D-1-GN-23-004031

## REPLY BRIEF OF APPELLANT TCEQ

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

**December 23, 2025**

AMANDA ATKINSON CAGLE
Assistant Attorney General
State Bar No. 00783569
Amanda.Cagle@oag.texas.gov

SARA J. FERRIS
Assistant Attorney General
State Bar No. 50511915
Sara.Ferris@oag.texas.gov

OFFICE OF THE ATTORNEY
GENERAL OF TEXAS
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 975-1582 | Fax: (512) 320-0911

*Attorneys for the Texas Commission on
Environmental Quality*

**Oral Argument Requested**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.........................................................................iv

GLOSSARY OF ACRONYMS AND TECHNICAL TERMS...........................vii

ARGUMENT..................................................................................... 1

    I.    The Commission applied the appropriate legal standard and properly considered statutorily-designated materials when it found that Appellees were not entitled to a contested case hearing ....................................................1

        A.    An affected person determination is an administrative proceeding with statutorily-defined rights and procedures—not a jury trial.................................... 1

        B.    The Water Code charges the Commission to consider specified materials and to determine the likely impact of the proposed discharge on a requestor—not to merely take requestors' statements as true .................................................... 3

        C.    The Commission is not required to limit its consideration of materials to those on file with the Chief Clerk ........................................................... 6

        D.    The Commission's consideration of the challenged materials is documented in the record..................................... 8

    II.    The Commission's determination that Appellees are not likely to be affected by the permit in a manner different from the general public is reasonable and supported by substantial evidence .....................................................11

        A.    Substantial evidence supports that Appellees' "contamination" allegations related to other permitted discharges do not establish them as affected by this permit............................................ 12

        B.    A permitted discharge does not automatically create injury to downstream land through which the receiving waters flow............................................ 15

C. Substantial evidence supports that Appellees are not likely to be affected by this permit in a manner different from the general public ............................................. 18

CONCLUSION AND PRAYER ........................................................................ 22

CERTIFICATE OF SERVICE......................................................................... 24

CERTIFICATE OF COMPLIANCE................................................................ 25

# INDEX OF AUTHORITIES

**Cases**

*Barshop v. Medina Cnty. Underground Water Conservation Dist.*,
925 S.W.2d 618 (Tex. 1996) ................................................................ 16

*City of Canyon v. McBroom*,
121 S.W.3d 410 (Tex. App.—Amarillo 2003, no pet.) .................................... 16

*Heat Energy Advanced Tech., Inc. v. W. Dall. Coal. for Envtl. Justice*,
962 S.W.2d 288 (Tex. App.—Austin 1998, pet. denied) .................................... 5

*Lake Medina Conservation Soc. v. Texas Nat. Res. Conservation Comm'n*,
980 S.W.2d 511 (Tex. App.—Austin 1998, pet. denied) ................................ 16

*Shrimpers & Fishermen of RGV v. Texas Comm'n on Envtl. Quality*,
968 F.3d 419 (5th Cir. 2020) ................................................................ 6

*Sierra Club v. Texas Comm'n on Envtl. Quality*,
455 S.W.3d 214 (Tex. App.—Austin 2014, pet. denied) .................................... 3

*Stark v. Geeslin*,
213 S.W.3d 406 (Tex. App.—Austin 2006, no pet.) .......................................... 2

*Texas Catastrophe Prop. Ins. Ass'n v. Council of Co–Owners of Saida II Towers Condo. Ass'n*,
706 S.W.2d 644 (Tex. 1986) ................................................................ 2

*Texas Comm'n on Envtl. Quality v. City of Waco*,
413 S.W.3d 409 (Tex. 2013) ........................................................ 1, 2, 12

*Texas Comm'n on Envtl. Quality v. Sierra Club*,
455 S.W.3d 228 (Tex. App.—Austin 2014, pet. denied) .................... 4, 11, 19, 22

*Texas Rivers Prot. Ass'n v. Texas Nat. Res. Conservation Comm'n*,
910 S.W.2d 147 (Tex. App.—Austin 1995, writ denied) ................................ 16

*United Copper Indus. v. Grissom*,
17 S.W.3d 797 (Tex. App.—Austin 2000, pet. dism'd) .................................... 5

**Constitutional Provisions & Statutes**

33 U.S.C. § 1313(d)(1) ............................................................................ 13

Tex. Gov't Code § 2001.060 ..................................................................... 7

Tex. Gov't Code § 2001.175(b) ................................................................ 11

Tex. Water Code § 5.115 .......................................................................... 15

Tex. Water Code § 5.115(a) .............................................................. 2, 4, 5

Tex. Water Code § 5.115(a-1) ............................................................... 2, 5

Tex. Water Code § 5.115(a-1)(1) .......................................................... 3, 5

Tex. Water Code § 5.115(a-1)(1)(A)-(E) ................................................. 7

Tex. Water Code § 5.115(a-1)(1)(B) ........................................................ 4

Tex. Water Code § 5.115(a-1)(1)(C) ...................................................... 10

Tex. Water Code § 5.115(a-1)(1)(D) ...................................................... 21

Tex. Water Code § 5.221 ......................................................................... vii

Tex. Water Code § 5.222 ......................................................................... vii

Tex. Water Code § 5.228(c) ...................................................................... 7

Tex. Water Code § 5.556 ........................................................................... 2

**Rules & Regulations**

30 Tex. Admin. Code § 39.419 ............................................................... vii

30 Tex. Admin. Code § 55.201(a) ............................................................. 8

30 Tex. Admin. Code § 55.201(d)(2) ........................................................ 4

30 Tex. Admin. Code § 55.203(c) ............................................................. 6

30 Tex. Admin. Code § 55.211(a) .......................................................... 1, 3

30 Tex. Admin. Code § 55.251 ............................................................ 4

30 Tex. Admin. Code § 55.255(a)........................................................1, 3

30 Tex. Admin. Code § 80.118 ............................................................ 7

30 Tex. Admin. Code, Ch. 307 ............................................................ 9

30 Tex. Admin. Code § 307.2(e) .......................................................... 9

30 Tex. Admin. Code § 307.10 ............................................................ 9

30 Tex. Admin. Code § 307.10, Appendices A-D ................................... 13

# GLOSSARY OF ACRONYMS AND TECHNICAL TERMS

**Appellees** – Wilbarger Creek Conservation Alliance (WCCA), its President, Jon Beall, its Vice President, Anne Brockenbrough, and its Board Member Marilyn Kelinske, (referenced collectively as WCCA).

**Applicant** – SWWC Utilities, Inc.

**AR** – Administrative Record.

**Commission or TCEQ** – Texas Commission on Environmental Quality, Appellant in this suit.

**Discharge Point** or **Outfall** – The location where water, run-off, or effluent enters a watercourse (such as a creek or river).

**Executive Director** or **ED** – TCEQ's Executive Director – Oversees the day-to-day operations of the agency, including processing applications for wastewater treatment permits and preparing draft permits and recommendations for the Commission. *See* Tex. Water Code §§ 5.221-5.222; 30 Tex. Admin. Code § 39.419.

**Final Order** – Final Order of the Texas Commission on Environmental Quality, signed on May 2, 2023, in TCEQ Docket No. 2023-0370-MWD, concerning the application by SWWC Utilities, Inc. for a new Texas Pollutant Discharge Elimination System Permit No. WQ0016022001.

**RTC** or **Response to Comments** – The Executive Director's written analysis and evaluation of Appellees' concerns articulated in their comments. The RTC was incorporated in full into the Final Order.

**RTHR** or **Response to Hearing Requests** – The Executive Director's written response and opinion regarding whether Appellees' hearing requests should be granted.

**SWQM/SWQMIS** – Texas Surface Water Quality Monitoring/Texas Surface Water Quality Monitoring Information System or Texas Surface Water Quality Monitoring System.

**TMDL** – Total Maximum Daily Load. A concept associated with protecting or improving impaired or threatened waters. The federal Clean Water Act requires Texas to determine a TMDL for water bodies that are impaired or threatened.

## ARGUMENT

### I. The Commission applied the appropriate legal standard and properly considered statutorily-designated materials when it found that Appellees were not entitled to a contested case hearing

Appellees fundamentally misunderstand the nature of the determination they challenge. They complain that they were deprived "of the opportunity to challenge" the permit supporting materials and the Commission's reports and standards, and that the Executive Director's opinions and analysis were too conclusory to support the Commission's final decision, citing to authorities regarding evidentiary standards for review of jury trials and contested cases. Appellees' Br. at 22, 34. But an affected person determination is neither a jury trial, nor a contested case. Rather, the procedures and standards applicable here are set forth by statute and rule—and do not incorporate contested case or jury trial type processes. The Commission properly made the affected person determinations at issue here in accord with the standards and procedures applicable to this special type of threshold determination.

#### A. An affected person determination is an administrative proceeding with statutorily-defined rights and procedures—not a jury trial

"The Commission's … determination of whether the party is an 'affected person' … is not itself a contested case." *Texas Comm'n on Envtl. Quality v. City of Waco*, 413 S.W.3d 409, 417 (Tex. 2013) (internal citations omitted) (*City of Waco*); *see also* 30 Tex. Admin. Code §§ 55.211(a), 55.255(a). An affected person

1

determination is a Legislatively-created process through which the Commission determines whether a requestor has the right to participate in a different Legislatively-created process, a contested case hearing. *See* Tex. Water Code §§ 5.556, 5.115(a), (a-1). When the Legislature creates a right, it can also prescribe the procedures and requirements for entitlement to that right. *Texas Catastrophe Prop. Ins. Ass'n v. Council of Co–Owners of Saida II Towers Condo. Ass'n*, 706 S.W.2d 644, 645–46 (Tex. 1986). Contested cases are expensive and time-consuming, and the public has a significant and legitimate interest in conserving finite fiscal and administrative resources. *City of Waco*, 413 S.W.3d 409, 410; *see also Stark v. Geeslin*, 213 S.W.3d 406, 415 (Tex. App.—Austin 2006, no pet.) ("At some point, the benefit of providing additional safeguards to individuals potentially affected by adverse administrative action may be outweighed by the cost").

Here, the Legislature chose to steward limited state resources by providing a streamlined, circumscribed process for the Commission to make the threshold determination of whether a hearing requestor might be affected by a permit in a manner different from the general public. Tex. Water Code §§ 5.556, 5.115(a), (a-1); *City of Waco*, 413 S.W.3d 409, 410. The process gives requestors the opportunity to provide comments, to express their dissatisfaction with the proposed permit, to tell the Commission why they think they will be adversely affected by the

2

proposed permit, and to have the Commission consider their comments and any evidence they offer in support. *Sierra Club v. Texas Comm'n on Envtl. Quality*, 455 S.W.3d 214, 224 (Tex. App.—Austin 2014, pet. denied)(*Sierra Club I*); *see also* 30 Tex. Admin. Code §§ 55.211(a), 55.255(a). But it does not afford them discovery; there is no opportunity for them to examine and challenge evidence. Rather, they may offer comments and evidence for the Commission to consider, along with the statutorily-enumerated categories of materials and factors (application and supporting materials, ED's analysis and opinions, and other data submitted to the Commission, whether the application meets statutory standards, the likely impact of the discharge on requestors' interests). Tex. Water Code § 5.115(a-1)(1).

**B.** **The Water Code charges the Commission to consider specified materials and to determine the likely impact of the proposed discharge on a requestor—not to merely take requestors' statements as true**

Appellees' contention that it was error for the Commission to weigh and consider their allegations of injuries in light of contravening materials such as the ED's analysis and opinions and the permit supporting documents (Appellees' Br. at 22-25), confuses the rule that explains how to file a request with the statutory factors relevant to evaluating that request. Weighing and considering the information in front of it is exactly what the Legislature has required of the Commission.

3

By rule, the Commission directs requestors to provide "a brief, but specific, written statement" with their "location and distance relative to the proposed facility" and how and why they will be adversely affected. 30 Tex. Admin. Code §§ 55.201(d)(2), 55.251. By statute, the Legislature directs the Commission to consider and weigh factors including whether the permit meets requirements for issuance, the permit application supporting materials, and the Executive Director's opinions and analysis when it evaluates "the likely impact of regulated activity on the health, safety, and use of the property of the hearing requestor." Tex. Water Code §§ 5.115(a), 5.115(a-1)(1)(B). The Commission does not simply accept requestors' statements about the impact of the discharge on the impacted resource or their proximity to the facility, and it certainly does not take as true requestors' legal conclusions that they will be impacted.

> In making a decision regarding affected-person status, TCEQ enjoys the discretion to weigh and resolve matters that may go to the merits of the underlying application, including the likely impact the regulated activity … will have.

*Texas Comm'n on Envtl. Quality v. Sierra Club*, 455 S.W.3d 228, 235 (Tex. App.—Austin 2014, pet. denied) (*Sierra Club II*). To determine whether a contested case hearing is warranted, the Commission must weigh and evaluate whether this particular permitted discharge is likely to affect this particular requestor in a manner different from the general public. It does so by considering the permit application

4

and supporting materials, including engineering reports, modeling, and its own experts' analysis of the likely effects of the discharge on the receiving waters, as well as requestors' statements and concerns. *Id.*, Tex. Water Code §§ 5.115(a), 5.115(a-1)(1). It does not simply accept a requestor's statement that she or he will be affected.

Appellees cite to *United Copper Indus. v. Grissom*, 17 S.W.3d 797, 802 (Tex. App.—Austin 2000, pet. dism'd) and *Heat Energy Advanced Tech., Inc. v. W. Dall. Coal. for Envtl. Justice*, 962 S.W.2d 288, 295 (Tex. App.—Austin 1998, pet. denied), contending that the Commission erred in considering evidence (such as the permit supporting materials and the Commission's samples and reports on water quality in Wilbarger Creek) and should have instead simply accepted Appellees' allegations as true. But neither of those cases actually holds that the Commission must take as true requestors' statements that they will be adversely affected by a proposed permit. More importantly, these cases pre-date the 2015 changes to the Water Code, the changes that set forth in detail both the determinations and materials the Commission was to consider going forward when it made an affected person determination. *See* Tex. Water Code § 5.115(a-1).

The current and applicable law charges the Commission to consider the "likely impact of the regulated activity" on the requestor, information gathered

through the application process, the requestor's location, staff experts' analysis and opinions of the discharge's likely effects on the receiving waters, whether the proposed permit meets statutory standards, and the analysis and opinions of the executive director. 30 Tex. Admin. Code § 55.203(c); Tex. Water Code § 5.115; *see also Shrimpers & Fishermen of RGV v. Texas Comm'n on Envtl. Quality*, 968 F.3d 419, 422 (5th Cir. 2020) (in determining whether requestor is likely to be affected, TCEQ may consider "the merits of the underlying application" and "the analysis and opinions of the executive director"). The Legislature has charged the Commission to weigh and consider this information when determining whether a requestor is affected and the Commission properly did so here.

## C. The Commission is not required to limit its consideration of materials to those on file with the Chief Clerk

Appellees also err in contending that the Commission did not or should not have considered the materials included in the Supplement to the Administrative Record. As the District Court found when it admitted these materials, they were properly included in the record because they were considered by the Commission when it made its determination. RR at 6-11. These materials are referenced and discussed in the Executive Director's Response to Comments (RTC),[1] and the

---

[1] The materials are also specifically listed in the Statement of Basis/Technical Summary as having been considered in developing the draft permit. RR.AR.12 at 6.

Commission incorporated the RTC—including its references and discussions of these materials—in full into the Final Order. RR.AR.31 at 1-2 [Final Order], RR.AR.20 [RTC]. By referencing these materials in the Final Order, the Commission made clear that it had considered them.

Appellees also assert that when the Commission made its determination "the administrative record consisted of the documents filed with the TCEQ Chief Clerk." Appellees' Br. at 19. But nothing supports that assertion. Certainly, in a contested case hearing, the materials in the administrative record are those filed with the clerk or admitted into evidence, as provided by the laws and rules governing contested case hearings. *See e.g.*, Tex. Water Code § 5.228(c) (requiring the ED to provide the information to complete the administrative record in a contested case hearing process); 30 Tex. Admin. Code § 80.118 (listing items to be included in the administrative record of a contested case hearing); Tex. Gov't Code § 2001.060 (same). But here, where there is no contested case, and no procedures for admission of evidence or taking of official notice, Appellees' assumption fails. The Commission is charged to make an affected person determination prior to referring the matter for hearing—and is told what materials it may consider in doing so. It is not required to limit its consideration to materials filed with the Chief Clerk, nor is it required to take formal notice of its own reports and standards. *Id.* § 5.115(a-1)(1)(A)–(E).

7

Appellees' arguments would require this Court to add restrictive language to the Water Code—language the Legislature chose not to include.

Appellees also err in implying that the Commission's consideration of these materials was hidden from them. The materials were referenced and discussed in the Executive Director's Response to Comments, which was filed and served on Appellees on October 19, 2022. RR.AR.20 at 11. The ED then issued her decision on October 26, 2022. RR.AR.21. By rule, requestors have 30 days after the mailing of those documents to file hearing requests. 30 Tex. Admin. Code § 55.201(a). Appellees were informed of the Executive Director's opinions and of the materials she referenced, and given more than 30 days to address them.

**D.    The Commission's consideration of the challenged materials is documented in the record**

The Standards Implementation Procedures (IPs), RR.AR.39, are referenced both in the RTC's discussion of the antidegradation review and the methodologies of analysis and modeling, and in also in the ED's Statement of Basis/Technical Summary, which lists documents considered. RR.AR.20 at 5-6 [RTC]; RR.AR.12 at 6 [Statement of Basis/Technical Summary]. This is both reasonable and expected since the Commission is required by law to adhere to the IPs in evaluating permits; they are an integral part of the Texas Water Quality Standards which are

implemented through permitting. 30 Tex. Admin. Code § 307.2(e).[2] Appellees are wrong to suggest that the Commission did not consider the IPs, when it is both required to consider them *and* when it referenced them in its Final Order.

The Order (by incorporation of the RTC) similarly references the Texas Integrated Report of Surface Water Quality and explains that the Integrated Report[3] is updated every two years to incorporate more current sampling data. RR.AR.20 at 8-9 (discussing Integrated Report and explaining that Appellees' demand for a TMDL is misplaced because Wilbarger Creek is not impaired); *see also* RR.AR.31 at 1-2 [Final Order]. The Integrated Report results are also codified into the Site-Specific Standards set forth at 30 Tex. Admin. Code, Chapter 307 and referenced in the Statement of Basis/Technical Summary of the permit.[4] RR.AR.12 at 6. The Commissioners operate with the benefit of the expertise and analysis of the agency and its published reports and standards, not in a jury-type vacuum where access to data is limited to that filed with the Chief Clerk or admitted by a judge.

---

[2] The IPs were reviewed and approved by the EPA as part of its delegation to Texas under the federal Clean Water Act. RR.AR.40 at 1 [Implementing the Texas Surface Water Quality Standards in Permitting].

[3] The Integrated Reports for both 2020 and 2022 are included here because the permit was considered during that timeframe.

[4] Data for the Colorado River segment and Wilbarger Creek is found at 30 Tex. Admin. Code § 307.10, Appendices A, C, and D, and indicates that neither is even remotely impaired. *See also* RR.AR.20 at 8 [RTC].

The modeling and standards implementation working papers, RR.AR.36-37, are supporting documentation for the permit prepared by the ED during technical review. *See also* RR.AR.7 [Standards Implementation Memo], RR.AR.9 [Water Quality Modeling Memo], RR.AR.12 [Statement of Basis/Technical Summary]. "Supporting documentation" is specifically listed in § 5.115(a-1)(1)(C) for consideration by the Commission. These documents are the source of the specific details regarding the modeling that was performed, including that the model contains multiple outfalls, and which provides the amounts and quality of the discharged effluent of those other outfalls, and of the details of the site-specific nutrient screening performed to address potential algal blooms in the RTC that were incorporated into the Final Order. RR.AR.20 at 6-8 [RTC].

Appellees' complaint regarding the TCEQ's Surface Water Quality Monitoring (SWQM) System Map, RR.AR.44, similarly ignores the fact that the Order (through the RTC) discusses the specific locations of SWQM stations when it explains that the Commission has sampling data collected at "an active SWQM station approximately 2.25 miles downstream" of the proposed facility, and also at "other active SWQM stations further upstream and downstream on Wilbarger Creek, in which current water quality data is being collected." RR.AR.20 at 8-9. The Map is the source of the referenced locations. RR.AR.44.

**II.    The Commission's determination that Appellees are not likely to be affected by the permit in a manner different from the general public is reasonable and supported by substantial evidence**

The Court reviews "a TCEQ determination regarding affected-person status for an abuse of discretion." *Sierra Club II*, 455 S.W.3d 228, 235. It does so in light of "the entire record of the proceeding under review," which the Commission is required to prepare and file as part of the process for judicial review of an agency order. Tex. Gov't Code § 2001.175(b). Here, the Commission provided the entire record of its affected person determination—the proceeding under review here. That proceeding was not a contested case and the district court properly rejected Appellees' objections that attempted to impose contested case record requirements onto this proceeding and admitted that record into evidence. *See* RR at 5, 11.

The record of this proceeding supports that the TCEQ considered the factors the Legislature directed it to consider (it evaluated "the likely impact of regulated activity on the health, safety, and use of the property" of Appellees) and reached a reasonable decision (that they are not likely to be impacted in a manner distinct from the general public by the permit)—and thus did not abuse its discretion. *Sierra Club II*, 455 S.W.3d 228, 235.

11

**A.    Substantial evidence supports that Appellees' "contamination" allegations related to other permitted discharges do not establish them as affected by this permit**

As an initial matter, Appellees' representations that the ED did not contradict that the creek is "impaired" and "confirmed that no TMDL project had been undertaken," Appellees' Brief at 6-9, misrepresent and distort. The ED refuted Appellees' contention that Wilbarger Creek is impaired in her response to Appellees' comment that a TMDL (Total Maximum Daily Load) study should be conducted on Wilbarger Creek. RR.AR.20 at 8-9. The ED explained that TMDL projects are *only for impaired waters*, that they are "conducted on water bodies that have been found to be impaired for some specific constituent(s) or other water quality-related parameter(s)." *Id*. at 8. She further explained that no TMDL project is planned, or appropriate for Wilbarger Creek *because Wilbarger Creek is not impaired*:

> Such impairments are documented in the Texas 303(d) list…of the Texas Integrated Report of Surface Water Quality, which is updated every two years. Wilbarger Creek is not listed as impaired…no TMDL projects have been developed for the Wilbarger Creek watershed, nor are any currently underway or planned.

*Id*. at 8. That TMDL projects are only for impaired waters has also been discussed by the Texas Supreme Court. *City of Waco*, 413 S.W.3d 409, 412 (Clean Water Act

requires Texas to determine a TMDL for water bodies that are impaired or threatened); 33 U.S.C. § 1313(d)(1).

Further, as the ED observed in the RTC, the Texas Integrated Reports for 2020 and 2022, which are based on the Commission's expert analysis of samples taken in Wilbarger Creek, find that Wilbarger Creek is not impaired, and that it supports *high* quality aquatic life. RR.AR.20 at 6, 8-9 [RTC], referencing RR.AR.42-43 [Integrated Reports]. The Texas Surface Water Standards, which are similarly based on Commission analysis of samples taken from Wilbarger Creek, similarly support that the creek is not impaired. 30 Tex. Admin. Code § 307.10, Appendices A-D [Texas Surface Water Standards for Wilbarger Creek and Colorado River]. In addition, the permitting supporting materials, including the Standards Implementation Memo, note that Wilbarger Creek supports high aquatic life use—which means it is not impaired—and the Modeling Memo specifically notes that the creek "is not currently listed on the State's inventory of impaired and threatened waters (the 2020 Clean Water Act Section 303(d) list)." RR.AR.7 at 1; RR.AR.9 at 1. This information supports the Commission's determination.

The Commission was not required to ignore that data and just accept Appellees' contentions that the creek is impaired. Appellees' second-hand account of a youth's verbal assessment of the creek as "impaired" was not supported by any

sample results or scientific analysis. RR.AR.34 at 13-14; 28-29 [Public Comments]. The Legislature charged the Commission to use its expertise and to *evaluate likely impacts*. And it did so.

Appellees raise arguments regarding the Commission's interpretation of the sample results and data contained in the Integrated Reports. But they miss the point. The Commission had before it sample data and analysis indicating that Wilbarger Creek supports high quality aquatic life, RR.AR.7 at 1, and, more importantly, that the quality of the water has not only not decreased, but has improved, since it went from being "of concern" for nitrates (algae-related) in 2020, RR.AR.42 at 5, to being not "of concern" for nitrates in 2022, RR.AR.43 at 8. This sample data shows conditions in the creek as it exists with multiple permitted discharges. *See* RR.AR.20 at 8 [RTC] (discussing other outfalls into Wilbarger Creek). It supports that this permit is not likely to impact Appellees.

The Legislature delegated the responsibility to monitor and protect Texas waterways—and to develop policies and procedures to do so—to the Commission, which is staffed by environmental specialists trained to interpret data. Appellees question the Commission's methods of sampling and data analysis. Appellees' Br. at 28. But that is neither here nor there for the purpose of this appeal. Appellees may disagree with the Commission's sampling procedures and analysis, but the

Commission's data and analysis support its determination that Appellees were not likely to be affected in a manner distinct from the public by this permit.

Appellees also allege that the cumulative impact of all the discharges into the creek, and in particular, the effects of other facilities that Appellees allege are discharging in violation of their permits show that this permit will injure them. Appellees' Br. at 12. First, as noted above, the Commission had before it sample data reflecting the water quality in the creek over time, and which indicates that the water quality has improved over that time as to nitrates. Second, Appellees' contentions regarding these other facilities make clear that there is no nexus between Appellees' alleged injuries and the permit *at issue here*. To establish affectedness, the permit at issue and the acts authorized by that permit must be likely to injure the requestor. *See* Tex. Water Code § 5.115. A requestor cannot establish that it is affected by *this* permit simply by alleging injury from other, *wholly unrelated permittee's violations* of another permit. Appellees' allegations fail to establish that they are likely to be affected by this permit; hence it was reasonable for the Commission to reject their request for a contested case hearing on this permit.

## B.    A permitted discharge does not automatically create injury to downstream land through which the receiving waters flow

Citing to three water rights cases and one involving a zoning challenge to a Wal-Mart, Appellees contend that because they own land downstream of the outfall,

this permit will damage their property rights. Appellees' Br. at 25-26. But none of the cited cases support Appellees' contention that they are automatically injured from a permitted discharge upstream from their property. In fact, none of them even involve a discharge permit; the courts in those cases were applying completely different bodies of law to completely different facts.

*Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 627 (Tex. 1996), held that landowners had standing to challenge a statute because it threatened to deprive them of access to their underground water. The threatened injury was deprivation of water. Similarly, *Lake Medina Conservation Soc. v. Texas Nat. Res. Conservation Comm'n*, 980 S.W.2d 511, 515-516 (Tex. App.—Austin 1998, pet. denied) and *Texas Rivers Prot. Ass'n v. Texas Nat. Res. Conservation Comm'n*, 910 S.W.2d 147, 151 (Tex. App.—Austin 1995, writ denied), also involved the removal of water and diversion of water. There is no deprivation or removal of water from Appellees here. The zoning case involved a challenge to a city's zoning decision to allow construction of a Wal-Mart in the flood plain and a nearby property owner was found to have alleged an injury because such large-scale construction near him in the floodplain was likely to increase his risk of flooding. *City of Canyon v. McBroom*, 121 S.W.3d 410, 415 (Tex. App.—Amarillo 2003, no pet.). Again, this is not the situation here. None of these cases hold, or even suggest, that

someone who owns property several miles downstream of a permitted discharge has automatically established an injury to their property rights.

Appellees allege injuries of an entirely different nature—injuries from contaminated water flowing across their properties that would presumably be caused by this permitted discharge. But the record does not support that this discharge will presumably contaminate the creek. The discharge constituents are stringently limited in accordance with standards developed to protect water quality and the Commission's expert analysis concluded that the permitted discharge would not degrade that water quality and that existing uses will be maintained and protected. RR.AR.20 at 6, 9 [RTC] (permit limits accord with requirements of the Colorado River Watershed Protection Rules); RR.AR.7 at 1 [Standards Implementation Memo]; RR.AR.12 at 2 [Statement of Basis/Technical Summary]. The Commission is charged to evaluate the *likely impact* of *this permit* on Appellees' interests and property. It did so using its technical expertise after reviewing the permit supporting materials, including modeling of the likely impact on *this* creek of a discharge with *these particular constituents*. Appellees' location downstream and ownership of property on the creek were factors that the Commission considered in that evaluation.

Appellees' property rights remain intact—if they suffer injury to their property because of discharges (whether permitted, such as this proposed facility or another permitted facility, or whether not permitted at all), they can pursue recourse for that invasion directly. *See* RR.AR.20 at 6-7 [RTC] ("the draft permit does not authorize any invasion of personal rights nor any violation of federal, state, or local laws or regulations…the proposed permit does not limit any landowner's ability to seek private action against the applicant"). But simply owning property on a creek into which a permitted discharge outfalls does not automatically establish that Appellees are injured by this permit.

C. **Substantial evidence supports that Appellees are not likely to be affected by this permit in a manner different from the general public**

Appellees attempt to build a straw man, contending that the Commission denied their hearing requests "solely based on proximity." Appellees' Br. at 12-36. Not only is this contention not supported—it is contravened. Chairman Niermann specifically stated that:

> the point that I'm trying to make is that what we're doing here is we're weighing different factors, that there is no bright line test, including none pertaining to distance.

CR.191 [Open Meeting Transcription]. The evidence regarding those factors in this case supports that the application met the statutory requirements for issuance, and supports that "operation of the facility as licensed is not likely to adversely affect the

environment in amounts that are prohibited under the law." *Sierra Club II*, 455 S.W.3d at 240; *see also* RR.AR.12 at 3, 6 [Statement of Basis/Technical Summary].

The Commission's experts, including the ED, analyzed, modeled, and evaluated the likely impacts of the proposed discharge for almost a year. The permit application and supporting documentation total hundreds of pages and include materials such as those submitted by the applicant, the applicant's engineer, and Commission staff. RR.AR.1 [Permit Application and Engineering Report], RR.AR.7 [Standards Implementation Memo], RR.AR.9 [Water Quality Modeling Memo], RR.AR.12 [Statement of Basis/Technical Summary], RR.AR.36 [Water Quality Modeling Memo Working Papers], RR.AR.37 [Standards Implementation Memo Working Papers], RR.AR.25-26 [Backup Documents and Amended Backup Documents for Agenda]. The final conclusion of all of this analysis was that the proposed discharge "will not" impair "existing water quality uses" and that "no significant degradation of water quality" is expected in the receiving waters which have "high and exceptional aquatic life uses" and that "[e]xisting uses will be maintained and protected." RR.AR.7 at 1 [Standards Implementation Memo]; RR.AR.9 [Water Quality Modeling Memo]; *see also* RR.AR.12 at 3-5 [Statement of Basis/Technical Summary]. Only because of all these findings was the proposed discharge found to meet statutory requirements. RR.AR.12 at 3-5.

The ED further analyzed and evaluated these materials in the Response to Comments, RR.AR.20, which fills 10 single-spaced pages, and specifically addresses each concern raised by Appellees in their comments. RR.AR.20. Her Response to Hearing Requests (RTHR) synthesized that information and those conclusions, and applied them specifically to Appellees, considering the size (volume) and characteristics (biological oxygen demand, bacteria, etc.) of the discharge, in light of all that modeling data, and in light of characteristics of the receiving waters at issue (Wilbarger Creek), and Appellees' proximity (or lack thereof) to the facility, and concluded that Appellees were not likely to be impacted in a manner distinct from the general public. RR.AR.23. She also observed that Appellees' concerns are not specific to them or to this proposed discharge. *Id*. Indeed, Appellees' concerns are not tied to this permit or to their locations, or even to the quality of the discharged treated effluent. Rather, Appellees' main concern is that the creek—which used to be dry or stagnant for most of the year—now flows year-round and contains treated effluent. RR.AR.34 at 11, 9, 16 [Public Comments]. But the presence of treated effluent does not establish injury. Indeed, the entire reason for the thoroughness of the permit review process is to ensure that discharges of treated effluent do not cause injuries.

Appellees argument that the ED's discussion of proximity was "conclusory" and should be disregarded relies on inapplicable caselaw regarding evidentiary standards for jury trials. Appellees' Br. at 34. The Commission is not a jury; it is an expert, with vast knowledge and expertise regarding environmental impacts of permitted activities. And it is charged to utilize that expertise in making an affected person determination. It is also permitted—specifically—to consider the opinions and analysis of the Executive Director. Tex. Water Code § 5.115(a-1)(1)(D). The Commission was authorized to consider the ED's opinions in making this determination.

Moreover, Appellees ignore that the ED's conclusion about proximity is just that—a conclusion—her opinion formed only after her experienced evaluation of all the facts of this case. RR.AR.12 [Statement of Basis/Technical Summary] RR.AR.20 [RTC], RR.AR.23 [RTHR]. That her conclusion made reference to proximity is to be expected. After all, proximity is always a factor in modeling and analysis of a permitted discharge—regardless of whether that discharge is to water or to air—because modeling evaluates the likely effects of a discharge at different distances from an outfall. And the ED's opinion regarding Appellees' lack of affectedness was not based solely on proximity in any case—it was just one of the many factors that she analyzed before opining that Appellees are not likely to be impacted by this

21

permit in a matter distinct from the general public. RR.AR.20 [RTC], RR.AR.23 [RTHR], RR.AR.12 [Statement of Technical Basis/Summary] (listing reference materials relied upon in making permitting recommendation).

This is the same type of evidence and analysis that the Austin Court of Appeals considered before concluding that "it would have been reasonable, and thus within TCEQ's discretion, to conclude that [requestors] are not affected persons because the licensed activity will have minimal effect on their health, safety, use of property, and use of natural resources." *Sierra Club II*, 455 S.W.3d 228, 240. That court further observed that "Finally, we would note, as did the Executive Director, that [requestors'] concerns about the licensed activity are shared by the general public. . . . In sum, we cannot say that TCEQ erred in deciding that neither [requestor] is a person who would be affected by the proposed permit under the relevant factors." *Id*.

## CONCLUSION AND PRAYER

Charged to utilize its expertise and access to environmental data as well as its expert analysis of this application and the allegations made by requestors, the Commission appropriately and reasonably analyzed the materials before it and found that Appellees were not likely to be affected by the permit at issue here. The District Court erred when it reweighed that evidence because it could not conceive of people

downstream not being injured by a discharge. The Court should reverse the district court order and render judgment affirming the Commission's Final Order denying Appellees' request for a contested case hearing and granting the permit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Amanda Atkinson Cagle*
AMANDA ATKINSON CAGLE
Assistant Attorney General
Texas State Bar No. 00783569
Amanda.Cagle@oag.texas.gov

SARA J. FERRIS
Assistant Attorney General
Texas State Bar No. 50511915
Sara.Ferris@oag.texas.gov

23

OFFICE OF THE ATTORNEY GENERAL
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel. 512-475-4002
Fax: 512-320-0911

**ATTORNEYS FOR THE TEXAS
COMMISSION ON
ENVIRONMENTAL QUALITY**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing ***Reply Brief of Appellant***

***TCEQ*** was served upon the following counsel of record on December 23, 2025 via

electronic service:

Christopher D. Smith
Becky L. Jolin
SMITH JOLIN PLLC
901 S. Mopac Expressway
Building 1, Suite 300
Austin, Texas 78746
chris.smith@smithjolin.com
becky.jolin@smithjolin.com

***Attorneys for Appellees***

/s/ Amanda Atkinson Cagle
AMANDA ATKINSON CAGLE

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing ***Reply Brief of Appellant TCEQ*** contains 5,045 words and therefore complies with the word limit found in Tex. R. App. P. 9.4(i)(2)(C).

/s/ *Amanda Atkinson Cagle*
AMANDA ATKINSON CAGLE
Assistant Attorney General

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Courtney on behalf of Amanda Cagle
Bar No. 783569
laura.courtney@oag.texas.gov
Envelope ID: 109399826
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant TCEQ
Status as of 12/23/2025 11:12 AM CST

Associated Case Party: Wilbarger Creek Conservation Alliance

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher Smith | 24051349 | Chris.Smith@smithjolin.com | 12/23/2025 9:32:39 AM | SENT |
| Becky Jolin | 10856200 | Becky.Jolin@smithjolin.com | 12/23/2025 9:32:39 AM | SENT |

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Laura Courtney | | laura.courtney@oag.texas.gov | 12/23/2025 9:32:39 AM | SENT |
| Sara Ferris | | sara.ferris@oag.texas.gov | 12/23/2025 9:32:39 AM | SENT |
| Amanda Cagle | | amanda.cagle@oag.texas.gov | 12/23/2025 9:32:39 AM | SENT |
| Colton Halter | | colton.halter@oag.texas.gov | 12/23/2025 9:32:39 AM | SENT |